# CIVIL ACTION COVER SHEET

**Trial Court of Massachusetts**
**The Superior Court**

`19-1212 B`

| | |
|---|---|
| **PLAINTIFF(S):** G. Renee Payne-Callender | **COUNTY** Suffolk |
| **ADDRESS:** 300 Ashmont Street, Dorchester, MA 02124 | |

**DEFENDANT(S):** Donna M. Gavin, 88 Wharf Street, Milton, MA 02186

City of Boston Police Department, One Schroeder Plaza, Roxbury Crossing, MA 02120

**ATTORNEY:** Jeremy Y. Weltman, Esq.

**ADDRESS:** Hermes, Netburn, O'Connor & Spearing, P.C.

265 Franklin Street, 7th Floor, Boston, MA 02110

**BBO:** 662293

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | [x] YES [ ] NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A? [ ] YES [x] NO

Is this a class action under Mass. R. Civ. B. 23? [ ] YES [x] NO

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ........... $
2. Total doctor expenses ........... $
3. Total chiropractic expenses ........... $
4. Total physical therapy expenses ........... $
5. Total other expenses (describe below) ........... $
   **Subtotal (A):** $

B. Documented lost wages and compensation to date ........... $
C. Documented property damages to date ........... $
D. Reasonably anticipated future medical and hospital expenses ........... $
E. Reasonably anticipated lost wages ........... $2,100,000
F. Other documented items of damages (describe below) ........... $1,000,000

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
Plaintiff has been discriminated against, retaliated against, and subjected to a hostile work environment. Plaintiff has lost wages, her earning capacity has been significantly reduced, and she has suffered extreme mental and emotional distress.

**TOTAL (A-F):** $3,100,000

### CONTRACT CLAIMS
(attach additional sheets as necessary)
[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

**TOTAL:** $

Signature of Attorney/ Unrepresented Plaintiff: X *Michell Bzps* Date: 4/17/19

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION PURSUANT TO SJC RULE 1:18
I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X *Michell Bzps* Date: 4/17/19

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 1984CV01212 | Trial Court of Massachusetts The Superior Court |
| --- | --- | --- |

| CASE NAME: Detective G Renee Payne-Callender vs. Lieutenant Detective Donna M Gavin et al | Michael Joseph Donovan, Clerk of Court |
| --- | --- |
| TO: | COURT NAME & ADDRESS Suffolk County Superior Court - Civil Suffolk County Courthouse, 12th Floor Three Pemberton Square Boston, MA 02108 |

## TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                                   DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
| --- | --- | --- | --- |
| Service of process made and return filed with the Court | | 07/16/2019 | |
| Response to the complaint filed (also see MRCP 12) | | 08/15/2019 | |
| All motions under MRCP 12, 19, and 20 | 08/15/2019 | 09/16/2019 | 10/15/2019 |
| All motions under MRCP 15 | 08/15/2019 | 09/16/2019 | 10/15/2019 |
| All discovery requests **and depositions** served and non-expert depositions completed | 02/11/2020 | | |
| All motions under MRCP 56 | 03/12/2020 | 04/13/2020 | |
| Final pre-trial conference held and/or firm trial date set | | | 08/10/2020 |
| Case shall be resolved and judgment shall issue by | | | 04/16/2021 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>. You will be notified of that date at a later time.**

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 04/17/2019 | ASSISTANT CLERK Christine M Hayes | PHONE (617)788-8141 |
| --- | --- | --- |

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
CIVIL ACTION No.: 19-1212 B

G. RENEE PAYNE-CALLENDER,              )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )
                                       )
DONNA M. GAVIN and                     )
CITY OF BOSTON POLICE DEPARTMENT,      )
                                       )
        Defendants.                    )

## VERIFIED COMPLAINT AND JURY DEMAND

This case concerns discrimination, retaliation, and harassment suffered by the Plaintiff, Detective G. Renee Payne-Callender ("Payne-Callender"), at the hands of the Defendants, Lieutenant Detective Donna M. Gavin ("Gavin") and the City of Boston Police Department. Payne-Callender, an African-American woman, has been an officer and detective in the predominantly white male Boston Police Department for almost 34 years. She has an exemplary record of victim advocacy, resilience in her fight against human trafficking and crimes against children, and investment in the neighborhoods within the City of Boston.

Payne-Callender began her career in 1985 as a police dispatcher. By the end of 1986, she attained the rank of police officer; she was promoted to detective in 1998. Payne-Callender's exemplary career trajectory continued over the next decade; she investigated domestic violence allegations for the Sexual Assault Unit, she worked alongside the FBI in the Bureau of Field Services, and in 2007 she was transferred to the Boston Police Department Family Justice Center's prestigious Human Trafficking Unit. From 2007 to 2009, Payne-Callender thrived in the Human

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
CIVIL ACTION No.:

|  |  |
|---|---|
| G. RENEE PAYNE-CALLENDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DONNA M. GAVIN and | ) |
| CITY OF BOSTON POLICE DEPARTMENT, | ) |
| | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT AND JURY DEMAND

This case concerns discrimination, retaliation, and harassment suffered by the Plaintiff, Detective G. Renee Payne-Callender ("Payne-Callender"), at the hands of the Defendants, Lieutenant Detective Donna M. Gavin ("Gavin") and the City of Boston Police Department. Payne-Callender, an African-American woman, has been an officer and detective in the predominantly white male Boston Police Department for almost 34 years. She has an exemplary record of victim advocacy, resilience in her fight against human trafficking and crimes against children, and investment in the neighborhoods within the City of Boston.

Payne-Callender began her career in 1985 as a police dispatcher. By the end of 1986, she attained the rank of police officer; she was promoted to detective in 1998. Payne-Callender's exemplary career trajectory continued over the next decade; she investigated domestic violence allegations for the Sexual Assault Unit, she worked alongside the FBI in the Bureau of Field Services, and in 2007 she was transferred to the Boston Police Department Family Justice Center's prestigious Human Trafficking Unit. From 2007 to 2009, Payne-Callender thrived in the Human

Trafficking Unit.  However, everything changed in 2009 when then-Sergeant Detective Donna Gavin joined the Human Trafficking Unit as Payne-Callender's supervising Sergeant.  All of a sudden, Payne-Callender's positive career progression ceased.

In her time under Gavin, Payne-Callender was continuously subjected to discrimination on the basis of race, gender, and age, which resulted in a hostile work environment.  Payne-Callender brought the discrimination to the City of Boston Police Department's attention, yet no action was taken to remediate the situation; instead, it was pushed under the proverbial rug.  In 2011, Gavin transferred Payne-Callender out of the Human Trafficking Unit even though Payne-Callender was the Unit's most qualified detective.  Payne-Callender was eventually re-assigned to the Crimes Against Children Unit, where she was no longer under Gavin's direct supervision.  However, because the Crimes Against Children Unit was, along with the Human Trafficking Unit, part of the Family Justice Center, Payne-Callender remained under the purview of Gavin's influence.

Payne-Callender's complaints about Gavin, the Boston Police Department Family Justice Center's sole female Lieutenant Detective, and the public face of the Police Department's "integration" of women into the higher ranks of the force, permanently damaged Payne-Callender's career.  Further, because of Gavin's influence throughout the Family Justice Center, and the close proximity within which the Human Trafficking Unit and the Crimes Against Children Unit work, Payne-Callender continues to face a hostile work environment due to racial, gender, and age discrimination at the hands of both Gavin and the Boston Police Department.

In addition, the City of Boston Police Department has known of Gavin's discrimination towards Payne-Callender and has taken no steps to protect her, choosing instead, to turn a blind eye.  The minimal effort the City of Boston Police Department has placed into investigating Payne-Callender's allegations amounts to a sham investigation designed to protect itself and Gavin and

cause deliberate harm to Payne-Callender.  Payne-Callender, therefore, brings this action seeking compensatory and other damages, as further outlined herein.

## PARTIES

1.  The Plaintiff, Detective G. Renee Payne-Callender ("Payne-Callender"), is an individual residing at 300 Ashmont Street, Dorchester, Suffolk County, MA 02124.  Payne-Callender is a 56 year old African-American woman.  At all relevant times herein, Payne-Callender is and has been a Detective with the City of Boston Police Department.

2.  The Defendant, Lieutenant Detective Donna M. Gavin ("Gavin"), is an individual residing at 88 Wharf Street, Milton, Norfolk County, MA 02186.  Gavin is employed by Defendant City of Boston Police Department as a Lieutenant Detective.

3.  The Defendant, City of Boston Police Department ("Boston Police"), is a department with the City of Boston with its headquarters located at One Schroeder Plaza, Roxbury Crossing, Suffolk County, MA 02120.

## JURISDICTION AND VENUE

4.  Jurisdiction is conferred upon this Court pursuant to the provisions of Mass. Gen. Laws c. 212, §§ 3 and 4.  Venue in Suffolk County is proper pursuant to Mass. Gen. Laws c. 223, § 1.

## FACTS

5.  Payne-Callender is employed as a detective with the Boston Police Department.  She has been employed by the Boston Police for almost 34 years.  She has served as a detective in the Bureau of Field Services, the Bureau of Investigative Services, the Bureau of Professional Standards and Development, and the Family Justice Center. Within the Family Justice Center, Payne-Callender has worked as a detective in the Domestic Violence Unit, the Sexual Assault Unit,

and the Human Trafficking Unit. Payne-Callender is currently a detective in the Crimes Against Children Unit, which is also within the Family Justice Center.

6. Payne-Callender has received numerous accolades and commendations in the course of her career. She has been recognized for, among other things, her work with the Human Trafficking Unit, assisting the Suffolk County District Attorney's Office with the successful prosecution of serious criminal matters, and her dedication to outreach and programs to improve the Boston community. Payne-Callender's personnel record reflects her exemplary work performance and her efforts to seek out continuing education to better perform her duties as a Boston Police detective.

7. In seven of the past 10 years, Payne-Callender has dedicated her free time to serve as an adjunct professor of criminal justice at Roxbury Community College. Each year, Payne-Callender received permission from the Boston Police Commissioner to hold off-duty employment after submitting the standard, one-page Form 2196 "Request for Permission to Hold Off-Duty Employment" required by Boston Police Rule 102, § 33. The Commissioner routinely approved Payne-Callender's request without question.

8. On December 15, 2007, Payne-Callender was assigned to the Human Trafficking Unit of the Boston Police Bureau of Investigative Services. While in the Human Trafficking Unit, she held the role of Human Trafficking Task Force Officer with the FBI with Special-Duty U.S. Marshal ability. At all times relevant herein, Payne-Callender was and is the most qualified detective within the Boston Police to hold these positions.

9. On July 18, 2009, the Defendant Donna M. Gavin, holding at that time the rank of Sergeant Detective, was reassigned from the Sexual Assault Unit to the Family Justice Division (both within the Bureau of Investigative Services). Gavin became Payne-Callender's immediate

supervisor. Gavin's work schedule was Monday through Friday, 7:30 a.m. to 4:00 p.m.; Payne-Callender's schedule was Monday through Friday, 4:00 p.m. to 11:45 p.m. Payne-Callender had no direct supervisor while on duty. Without a direct supervisor, Payne-Callender was required from time to time to call Gavin on her department-issued cell phone. Gavin would not answer Payne-Callender's calls, all of which related to active criminal investigations. By ignoring Payne-Callender's calls, Gavin made it impossible for Payne-Callender to adequately perform her job duties and adhere to reporting requirements.

### *The City Councilor Incident*

10. On Friday, September 24, 2010, Payne-Callender, while working in the Human Trafficking Unit, received a telephone call from then-City Councilor Ayanna Pressley stating she was approached by a black male regarding prostitution at the Back Bay MBTA station. Payne-Callender called Gavin numerous times on her cellphone, but Gavin did not answer. Because Gavin did not answer, Payne-Callender contacted Sergeant Detective Daniel Keeler and informed him of the telephone call she had received from Councilor Pressley. Sgt. Det. Keeler, Boston Police detectives from District D-4, and Payne-Callender searched the Back Bay MBTA station and did not locate the reported party.

11. Despite not answering the numerous telephone calls from Payne-Callender, on Saturday, September 25, 2010, Gavin contacted Payne-Callender and accused her of failing to follow the protocol for notifying her supervisor.

12. On Monday, September 27, 2010, Gavin brought Payne-Callender before Kelly Nee, who upon information and belief was the Boston Police Deputy Superintendent at that time, accusing Payne-Callender of failing to notify Gavin of Councilor Pressley's encounter. Payne-

Callender was reprimanded and directed to notify Gavin of all incidents immediately. The fact
that Gavin did not answer her cell phone when Payne-Callender called was not addressed.

13. Gavin's accusations humiliated Payne-Callender in front of Dep. Sup. Nee and started what
has become a long and continuous history of Gavin's harassing and discriminatory behavior
creating a hostile workplace within which Payne-Callender was required to work.

### *The State Police Incident*

14. On Thursday, May 19, 2011, Payne-Callender received a telephone call from the
Massachusetts State Police asking for assistance from the Boston Police Human Trafficking
Unit with responding to an allegation of sex trafficking of a young female at the Best Western
Inn in Quincy, Massachusetts. Payne-Callender was out-of-state investigating another matter
and could not respond.

15. Heeding Dep. Sup. Nee and Gavin's directive that Gavin must be immediately notified of all
incidents, Payne-Callender directed the State Police to call Gavin's cellphone directly and
provided her phone number.

16. On Friday, May 20, 2011, Payne-Callender told Gavin she directed the State Police to call
Gavin directly about the sex trafficking incident. Gavin told Payne-Callender she did not speak
with the State Police.

17. On Saturday, May 21, 2011, Gavin called Payne-Callender and questioned her about the sex
trafficking incident. Payne-Callender again told Gavin she directed the State Police to call
Gavin directly.

18. On Wednesday, May 25, 2011, Gavin brought Payne-Callender before Captain Detective Mark
Hayes accusing her of failing to notify Gavin of the sex trafficking incident. Gavin stated she
could not manage Payne-Callender. Gavin further stated she did not like Payne-Callender.

19. Again, Gavin humiliated Payne-Callender with baseless accusations, this time in front of Capt. Det. Hayes.

20. Despite Gavin's clear animosity and dislike for Payne-Callender, Capt. Det. Hayes did nothing to protect Payne-Callender from Gavin's harassment or relieve her from reporting directly to Gavin. Instead, Gavin was allowed to transfer Payne-Callender out of the Human Trafficking Unit in retaliation for Gavin disclosing to Hayes that it was Gavin that failed to answer her phone that was the problem – not Payne-Callender's alleged failure to report. Gavin did not provide a reasonable or nondiscriminatory basis why Payne-Callender was being transferred or to which Unit she would go; however, it became increasingly clear to Payne-Callender that Gavin harbored discriminatory animus toward her on the basis of race, gender and age.

21. Gavin handpicked Detective Lanita Cullinane to replace Payne-Callender in the Human Trafficking Unit. While Det. Cullinane is an African-American female, she was less than 40-years-old at the time she replaced Payne-Callender, had less time on the force, and had no previous experience working in the Human Trafficking Unit or with trafficking victims.

22. Det. Cullinane was transferred out of the Human Trafficking Unit less than one year later and replaced by Ludwik Bartkiewicz, a younger, white, male detective. Det. Cullinane's brief time in the Unit was used to mask the true intent of the Boston Police: to replace Payne-Callender with a younger, white, male detective.

23. Payne-Callender met with Dep. Sup. Nee on June 1, 2011 to determine where Payne-Callender would be transferred.

24. Payne-Callender requested a transfer to the Special Investigations Unit, a Unit with zero African-American female detectives, and was simply told "no." No further reason was given.

25. After being denied a transfer to the Special Investigations Unit, Payne-Callender requested to be transferred to the Crimes Against Children Unit, which is housed in the same building as Gavin's Human Trafficking Unit.

26. Gavin tried to prevent Payne-Callender from working in the same building by pressuring Dep. Sup. Nee into reassigning Payne-Callender to another District rather than a Unit in the Family Justice Center.  In pressuring Dep. Sup. Nee, Gavin acted to prevent Payne-Callender from holding a position within the Boston Police commensurate with her training and experience.

27. Gavin's actions were an attempt to materially and objectively change the conditions of Payne-Callender's employment, subjecting her to adverse employment conditions and marginalizing Payne-Callender's position within the Boston Police for no other reason than because of her gender, race and age.

28. Gavin's conduct was and is a part of an ongoing pattern of harassing and discriminatory behavior creating a hostile workplace within which Payne-Callender was required to work. Gavin's ongoing harassment and discrimination caused Payne-Callender to dread coming to work each day.

### *2014 Unreasonable Withholding of Training Incident*

29. On August 26, 2014, Payne-Callender submitted a request to Capt. Det. Hayes to attend the "Human Trafficking Train the Trainer" professional development seminar put on by the Municipal Police Training Committee on September 8, 2014.  Payne-Callender made this request because she was the most knowledgeable and experienced detective in the area of human trafficking at the Boston Police and would greatly benefit from continuing education and training in the field.

30. Gavin attempted to block Payne-Callender from attending the training seminar for no valid reason other than her discriminatory animus toward Payne-Callender.

31. As a pretext for her discrimination against Payne-Callender, Gavin argued to Capt. Det. Hayes that Payne-Callender could not go to the training seminar because she was not a member of the Human Trafficking Unit anymore.

32. Nowhere in the requirements for this program did it require applicants to be current members of the Human Trafficking Unit. The training was not limited to a select number of individuals; it was open to all that satisfied the seminar's requirements.

33. Capt. Det. Hayes recognized that while Payne-Callender did not work in the Human Trafficking Unit, there were no other detectives in the Human Trafficking Unit better qualified than her, and granted her request to apply to and attend the seminar.

34. Gavin's blatant, intentional discrimination unreasonably interfered with Payne-Callender's ability to do her job.

35. Gavin's conduct in this instance was and is part of an ongoing pattern of discriminatory behavior creating a hostile workplace within which Payne-Callender was required to work, and about which the Boston Police did nothing to address.

### *2014 Sergeant's Exam*

36. In an attempt to advance her career and solidify a well-earned promotion, Payne-Callender registered to take the Boston Police Department's sergeant's exam in 2014.

37. Due to a death in her family, Payne-Callender had to travel outside the country to attend funeral services at the time in which the sergeant's exam was scheduled to take place.

38. Payne-Callender petitioned the Boston Police to take the exam early and her request was denied. Payne-Callender was told by former Director of Human Resources for the Boston

Police, Edward P. Callahan, that the only police officers allowed to take the sergeant's exam at a different time were those that could not take the test due to active duty military commitments outside of the country.

39. Payne-Callender subsequently learned that the Boston Police granted the requests of two other male officers to take the sergeant's exam at a different time, neither request being based on an active duty military commitment out of the country.

### *2017 Human Trafficking and Exploitation Training*

40. The Boston Police work in conjunction with the Suffolk County District Attorney's Office to investigate and prosecute human trafficking and exploitation crimes.  On December 21, 2016, Maryrose Anthes, Chief of the Human Trafficking and Exploitation Unit within the District Attorney's Office, sent an email to 17 people requesting that they save the date of February 15, 2017, for a free human trafficking and exploitation training session involving the District Attorney's Office and certain Boston Police employees.  Payne-Callender was a recipient of this email.

41. On February 14, 2017, the day before the training, Gavin sent an email to Payne-Callender stating "Renee, Please disregard the training that you were sent a save the date for.  Your attendance is not required." Gavin did not explain why she instructed Payne-Callender not to attend the free training.

42. On February 15, 2017, Payne-Callender and Detective Michael Sullivan, another detective in the Crimes Against Children Unit, notified their immediate supervisor Sergeant Detective Brian Miller and Capt. Det. Hayes that Gavin was prohibiting them from attending the free training with no given reason.

43. Upon information and belief, the training attendees were told that there was not enough space in the training room for Payne-Callender and Det. Sullivan to participate.  This excuse was not true.

44. Gavin's discrimination of Payne-Callender on the basis of her age, race and gender prohibited Payne-Callender from engaging in training designed to improve her performance as a detective and increase her chance for promotion.  Gavin's act of prohibiting Payne-Callender from attending the free training was not addressed by Sgt. Det. Miller, Capt. Det. Hayes, or any other Boston Police supervisor; rather, it was again swept under the proverbial rug.

45. Gavin's conduct in this instance was and is a part of an ongoing pattern of discrimination against Payne-Callender on the basis of her race, gender and age.  Gavin's continuous discriminatory conduct towards Payne-Callender created a hostile work environment.

### *2017 Gavin and Captain Detective Hayes Complaints*

46. On April 24, 2017, Gavin filed a formal complaint with Boston Police Internal Affairs against Capt. Det. Hayes for harassment, hostile work environment, gender discrimination, and retaliation.

47. On May 16, 2017, Capt. Det. Hayes filed a formal complaint with Internal Affairs against Gavin for neglect of duty and directives or orders.

48. On May 17, 2107, Gavin was removed from the chain of command and instructed to stop reporting to Capt. Det. Hayes and to report to Deputy Superintendent Norma Ayala.  It is the customary and usual practice of the Boston Police to remove a complainant or the aggressor from the chain of command once a complaint is filed.

49. During the course of the investigation into the competing complaints, Sergeant Detective Richard Dahill interviewed Payne-Callender about the events underlying the complaints.  The

interview was audio recorded.  During the interview, Payne-Callender expressed her fear that Gavin would retaliate against her for cooperating with the investigation.

50. Payne-Callender's fear of retaliation was never addressed.

### *2017 Civilian Incident*

51. Gavin's continuous discrimination and retaliation of Payne-Callender came to a head in August and September, 2017.

52. On August 15, 2017, a virus was detected on Payne-Callender's work computer.  She notified the Boston Police Information Systems Group ("ISG") and an ISG member serviced the computer the following morning.

53. On August 16, 2017, after waiting two hours at the direction of the ISG member, Payne-Callender restarted her computer.  At approximately 1:34 p.m., Sergeant Detective Thomas Lembo walked into Payne-Callender's office and directed her to unplug her computer.  Sgt. Det. Lembo then handed her a printed email addressed to civilian clerk Janet Dougherty of the Human Trafficking Unit.  The email, dated August 16, 2017 and timestamped 12:34 p.m., asked Ms. Dougherty to disconnect Payne-Callender's computer from the system due to the presence of a virus.  Payne-Callender called ISG and learned that the email to Ms. Dougherty was a second request to unplug her computer because of the presence of a virus.

54. Given the nature of the email's importance, Payne-Callender requested and received permission from Sgt. Det. Lembo to address the manner and delay in which the email was delivered to her.  Payne-Callender went to the Human Trafficking Unit office and spoke with Sergeant Kathy Doris.  She requested that Sgt. Doris instruct Human Trafficking Unit personnel to forward emails meant for Payne-Callender directly to her, rather than delaying delivery of the email by providing a copy to a supervisor.  Sgt. Doris agreed to this request.

55. Immediately following Payne-Callender's conversation with Sgt. Doris, Ms. Dougherty initiated a verbal exchange with Payne-Callender in an aggressive manner. Payne-Callender walked out of the Human Trafficking Unit and did not engage with Ms. Dougherty. Payne-Callender returned to the Crimes Against Children Unit and reported the incident to Sgt. Det. Lembo.

56. After a discussion between Sgt. Det. Lembo and Sgt. Doris, they determined the incident did not require narrative reports ("Form 26 Reports") documenting it from the parties or witnesses.

57. On August 17, 2017, Payne-Callender spoke to Capt. Det. Hayes about the incident with Ms. Dougherty and he agreed with and confirmed the decision of Sgt. Det. Lembo and Sgt. Doris that no Form 26 Reports were required.

58. On August 17, 2017, Payne-Callender observed Gavin and Ms. Dougherty leave the Family Justice Center together. Sometime later on August 17, 2017, when Ms. Dougherty returned to the Family Justice Center, she refused to speak with Sgt. Doris but rather handed her a Form 26 Report. Sgt. Doris took the Form 26 Report to Capt. Det. Hayes, at which time Capt. Det. Hayes stated that everyone in the Human Trafficking Unit (including Payne-Callender) must now submit a Form 26 Report.

59. On September 5, 2017, Sgt. Det. Lembo informed Payne-Callender that he was asked by Gavin to **rewrite** his Form 26 Report for submission to Human Resources and **remove facts** about the incident with Ms. Dougherty because his original Report would "open up a can of worms."

60. On September 6, 2017, Payne-Callender met with Capt. Det. Hayes, Sgt. Det. Lembo, and Sgt. Det. Miller and learned that Gavin had submitted only Ms. Dougherty's Form 26 Report to Human Resources and had not submitted the seven other Form 26 Reports related to the incident.

61. Gavin was not on duty or present in the Human Trafficking Unit at the time of the incident, and previously admitted that she "has limited knowledge of the 2017 Civilian Incident." Gavin did not attempt to speak with Payne-Callender about the incident with Ms. Dougherty, nor did she inform anyone about her submission of only Ms. Dougherty's Form 26 Report (despite having reviewed all eight Form 26 Reports on August 22, 2017). Gavin's deliberate indifference to and obfuscation of the facts in this instance was a deliberate attempt to smear Payne-Callender and is evidence of the type of discriminatory behavior that Payne-Callender has had to endure at the hands of Gavin. Gavin's discriminatory actions caused Payne-Callender to come under investigation by Human Resources, unreasonably interfering with Payne-Callender's work performance. Gavin was retaliating against her for cooperating with the investigation into the competing complaints between Gavin and Capt. Det. Hayes.

62. If Payne-Callender was white, or a male, she would not have been subjected to Gavin's humiliating and discriminatory acts.

63. If Payne-Callender was white, or a male, the Boston Police would have taken action against Gavin immediately for her discriminatory conduct towards Payne-Callender.

64. Gavin's insidious act of withholding relevant Form 26 Reports from Human Resources was and is a part of an ongoing pattern of discriminatory behavior and abuse creating a hostile workplace for Payne-Callender.

### *Payne-Callender's September 8, 2017 Internal Affairs Complaint*

65. Due to the continuous discrimination and retaliation on the part of Gavin, in particular her actions regarding the 2017 Civilian Incident, and the Boston Police Department's failure to take steps to protect Payne-Callender from Gavin's discriminatory and retaliatory conduct,

Payne-Callender was compelled to file a formal "Harassment and Hostile Work Environment" claim against Gavin with the Boston Police Internal Affairs Division.

66. On September 8, 2017, Payne-Callender met with Sergeant Detective John McDonough, formerly of the Internal Affairs Division, to file a complaint against Gavin. Sgt. Det. McDonough informed Payne-Callender that he was retiring and would not take a new case. He told Payne-Callender that he would write a synopsis of her complaint but would not take a recorded interview, and would pass it onto another officer in the department.

67. A meaningful investigation into Internal Affairs complaints includes, in part, the procedures set forth in Boston Police Rules and Procedures No. 114 titled "Sexual Harassment, Discrimination, Harassment, and Retaliation Policy and Complaint Procedure." The investigation conducted by Internal Affairs on behalf of Payne-Callender was certainly not meaningful.

68. On September 12, 2017, Payne-Callender spoke with Sergeant Detective Michael Talbot regarding her complaint against Gavin. Payne-Callender learned from Sgt. Det. Talbot that Superintendent Frank Mancini falsely reported that he spoke with Payne-Callender about the investigation into her complaint. Payne-Callender did not speak with Super. Mancini about Gavin at any time.

69. On September 15, 2017, Deputy Superintendent Jeffrey Walcott called Payne-Callender to schedule an interview on her claims against Gavin. Dep. Super. Walcott was not able to tell Payne-Callender who would be investigating her claims.

70. Payne-Callender's Internal Affairs interview took place on September, 19, 2017 in the presence of Lieutenant Detective Brian McEachern, Sergeant Detective Sharon Dottin and Union Attorney Scott Dunlap. During the interview, Payne-Callender stated that Sgt. Det.

McDonough's synopsis prepared on September 8, 2017 was inaccurate and inconsistent with what Payne-Callender reported.

71. After the interview, Lt. Det. McEachern told Payne-Callender that the assigned Internal Affairs Investigator would contact her. Payne-Callender requested immediate remedial action to protect her from discriminatory conduct, the hostile working conditions, and retaliation. Lt. Det. McEachern did not provide Payne-Callender any assurance that remedial action would be taken to remove her from the chain of command, despite the Department's usual and customary policy of removing a complainant or the aggressor from the chain of command once a complaint is filed.

72. On October 5, 2017, Payne-Callender learned from Capt. Det. Hayes that Sergeant Detective Brian Riley of Internal Affairs was assigned to investigate her complaint. Payne-Callender was never contacted by Sgt. Det. Riley despite Lt. Det. McEachern's representation that she would be contacted directly.

73. Payne-Callender repeatedly has been told that Internal Affairs is "investigating" her claim against Gavin, but have not reached a conclusion and are unable to tell Payne-Callender when the investigation will be completed. Upon information and belief, there are now three other internal affairs complaints against Gavin for creating a hostile workplace and other discriminatory acts and abuses against officers, civilian employees and the Suffolk County District Attorney's Office.

74. Since Payne-Callender filed her Internal Affairs Complaint, Gavin brought suit in Norfolk Superior Court against the Boston Police and Capt. Det. Hayes on March 16, 2018, alleging discrimination and hostile workplace claims. The case has since been removed to the U.S. District Court for the District of Massachusetts, Docket No. 1:18-cv-10819-LTS.

75. The pending litigation between the defendants to this action unreasonably prohibits Payne-Callender from obtaining a resolution of her Internal Affairs Complaint and protection from Gavin's harassment and discrimination.

76. To date, Internal Affairs has repeatedly failed to take action to protect Payne-Callender or legitimately investigate her claims.

77. The BPD's "investigation" into Payne-Callender's 2017 Internal Affairs Complaint is a sham undertaken to delay action against Gavin that may harm its defenses in Gavin's lawsuit against it and Capt. Det. Hayes.

### *2018 Crimes Against Children Unit Emails*

78. Payne-Callender injured her foot in a workplace incident on February 27, 2018.  Payne-Callender was out on temporary medical leave from March 14, 2018 to February 11, 2019. Despite this temporary medical leave, Payne-Callender at all times was and is a detective in the Crimes Against Children Unit.

79. While Payne-Callender was out on temporary medical leave, Gavin routinely and intentionally sent emails to all detectives in the Human Trafficking Unit and the Crimes Against Children Unit on case-related and investigatory matters.  Gavin systematically left Payne-Callender off of the email distribution chain of division- and case-specific emails despite Payne-Callender's assignment to the Crimes Against Children Unit.

80. Payne-Callender knows this to be true because other detectives within the Crimes Against Children Unit forwarded Payne-Callender emails sent by Gavin that did not include her as a recipient.

81. As pretext for her discrimination and retaliation against Payne-Callender, Gavin claims she also routinely and deliberately failed to include in her email distribution list Detective Mark Marengi, "a white male" who was also out on leave.

82. Gavin continues her pattern of discriminatory and retaliatory conduct creating a hostile workplace within which Payne-Callender is required to work – even when Payne-Callender was on temporary leave.  Gavin's deliberate, bad faith act of leaving Payne-Callender off of official Boston Police communications actively prohibited Payne-Callender from keeping abreast of department directives and severely disadvantaged Payne-Callender as she returned to work.  Without having been kept apprised of developments within the Crimes Against Children Unit, Payne-Callender's job performance and continued success as a Boston Police detective is now at risk.

83. Gavin's retaliatory conduct is a direct result of Payne-Callender's protected conduct, namely cooperating with the Internal Affairs investigation into the competing Gavin and Capt. Det. Hayes complaints and Payne-Callender's Complaint against Gavin.

***Payne-Callender's 2018 Massachusetts Commission Against Discrimination Complaint***

84. Because the Boston Police refused to provide any information about Payne-Callender's pending 2017 Internal Affairs Complaint and failed to protect her from Gavin, Payne-Callender filed a Complaint with the Massachusetts Commission Against Discrimination ("MCAD") on June 28, 2018. *See* Exhibit A, June 28, 2018 Complaint, MCAD Docket No. 18BEM01930.

85. The Boston Police filed its Position Statement/Request to Dismiss on September 12, 2018.

86. In its Position Statement, the Boston Police revealed, for the first time, that nine interviews and various investigative reports have been taken in response to Payne-Callender's 2017 Internal Affairs Complaint.

87. The Boston Police deliberately discriminated and retaliated against Payne-Callender by withholding this information.

88. Since the Boston Police filed its Position Statement/Request to Dismiss, it has engaged in further discriminatory, harassing and retaliatory conduct.

89. On or about September 21, 2018, Payne-Callender was commanded to submit to interrogation by the Internal Affairs Division of the Boston Police.

90. On October 4, 2018, Payne-Callender was interrogated for hours by Lt. Det. McEachern on the specific matters giving rise to the allegations contained in the MCAD Complaint.

91. The Boston Police ordered this interrogation in conjunction with IAD Complaint IAD2018-0354, its newly opened, retaliatory investigation into Payne-Callender's MCAD Complaint.

92. Payne-Callender requested an official transcript of that interview on October 18, November 1, and November 5, 2018.  Exhibit B, Emails from Kent W. McKinley, Esq. to the Boston Police Public Record Request Department dated October 18, November 1, and November 5, 2018.

93. On October 23, 2018, Payne-Callender also requested an official transcript of her September 19, 2017 interview regarding the 2017 Internal Affairs Complaint she filed, Complaint IAD2017-0409.  Exhibit C, Email from Kent W. McKinley, Esq. to the Boston Police Public Record Request Department dated October 23, 2018.

94. The BPD finally responded on November 5, 2018, declining to produce either of the requested transcripts.  Exhibit D, Email from Jennifer Samson, Legal Assistant at the Boston Police Department to Kent W. McKinley, Esq. dated November 5, 2018.  The purported basis for withholding Payne-Callender's own statements was that "the investigations of the two Internal Affairs cases involving Det. Payne-Callender are pending.  These cases are identified as IAD2017-0409 and IAD2018-0354.  Accordingly, the contents of these files, including Det.

Payne-Callender's interviews, are not subject to disclosure under the investigatory exemption of the public records law."

95. The Boston Police took almost three weeks to assert a boilerplate Freedom of Information Act excuse to withhold Payne-Callender's own sworn statements.

96. On November 7, 2018, Payne-Callender submitted an additional request for the transcripts to the Boston Police, this time offering to enter into a confidentiality order to maintain the supposed confidential nature of testimony therein.  Exhibit E, Email from Kent W. McKinley, Esq. to Jennifer Samson dated November 7, 2018.

97. Payne-Callender received no response to this offer to maintain the supposed confidential nature of testimony, despite no obligation on the part of Payne-Callender to do so.

98. On or about February 12, 2019, Internal Affairs Investigator Sergeant Juan Estevez called Payne-Callender and asked if she had any additional facts to add to her MCAD Complaint because he was going to *start* interviewing people.

99. Sgt. Estevez's attempt to garner evidence directly from Payne-Callender about the allegations in her MCAD Complaint *while the case is still pending before the MCAD*, is continued harassment (in addition to the October, 2018 interrogation), intimidation, retaliation, and an attempt to coerce Payne-Callender into dismissing her MCAD Complaint.

100.    The Boston Police are retaliating against Payne-Callender because she filed her MCAD Complaint.

101.    The "investigation" by the Boston Police into Payne-Callender's MCAD Complaint is a sham undertaken to harass and retaliate against her for filing the MCAD Complaint.

102.    The Boston Police continue to engage in discriminatory, harassing, intimidating and

retaliatory conduct towards Payne-Callender and violate Payne-Callender's right to be free

from harassment and discrimination.

### *2019 Return to Work*

103.    Payne-Callender returned to work in the Crimes Against Children Unit from medical leave

on February 11, 2019.

104.    In complete disregard for Payne-Callender's formal Internal Affairs Complaint against

Gavin; her MCAD Complaint against Gavin and the Boston Police; and the Boston Police

Internal Affairs investigation into Payne-Callender's MCAD Complaint, the Boston Police

further retaliated against Payne-Callender by allowing Gavin to remain Payne-Callender's

direct supervisor.

105.    Payne-Callender's new partner in the Crimes Against Children Unit is Detective John

Noberini.

106.    In an act of harassment and retaliation, Det. Noberini issued a warning to Payne-Callender

that if asked by Gavin, any information Payne-Callender disclosed to him would be reported

to her.

107.    Upon information and belief, Gavin deliberately avoided entering the office Payne-

Callender shares with Det. Noberini now that Payne-Callender has returned to work.

108.    This behavior on the part of Gavin prevented Payne-Callender from effectively reporting

significant, case-related information "up the chain of command" (Gavin's pretext for

transferring Payne-Callender out of the Human Trafficking Unit in 2011, see ¶¶ 18-28, *supra*)

and exposed Payne-Callender to the risk of discipline for failing to adhere to department

policies and directives.

109.  Gavin's most recent actions are a part of the long and continuous history of harassing and discriminatory behavior creating a hostile workplace within which Payne-Callender is required to work.

110.  On February 13, 2019, Payne-Callender submitted the standard, one-page Form 2196 "Request for Permission to Hold Off-Duty Employment," as required by Boston Police Rule 102, § 33, to serve as an educator and presenter with Renz Consulting, LLC, teaching criminal justice curriculum on an as-needed basis.

111.  Unlike the last seven times Payne-Callender sought off-duty employment, the Boston Police Legal Department required her to submit an additional Form 26 Report – the same type of narrative report Payne-Callender was obligated to submit in response to the 2017 Civilian Incident.

112.  The Legal Department has never been involved in Payne-Callender's requests for employment outside of the Department. Boston Police Rule 102, § 33 explicitly states that such a request is to be approved by an employee's Commanding Officer/Director, the Bureau Chief, and the Police Commissioner.

113.  The Boston Police Legal Department's involvement in Payne-Callender's off-duty employment request is an act of harassment and retaliation designed to intimidate and discourage Payne-Callender from seeking protection from discrimination on the part of Gavin and the Boston Police. The Boston Police are acting to make every part of Payne-Callender's employment unbearable, down to the smallest opportunity to further serve the community.

114.  All of the foregoing actions on the part of Gavin and the Boston Police are part of a continuing course of conduct amounting to years of discrimination, retaliation, harassment and abuse sustained by Payne-Callender.

**Count I**
**Discrimination on the Basis of Race, Gender and Age**
**(as against Donna M. Gavin)**
**Mass. Gen. Laws c. 151B, § 4 and 29 U.S.C. § 631(a)**

115.    Payne-Callender alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 114.

116.    The foregoing severe, pervasive race, gender and age based discrimination by Gavin created a hostile work environment and deprived Payne-Callender of opportunities to advance her career that, based on merit, Payne-Callender was supremely qualified for.

117.    Gavin's actions have violated Payne-Callender's right to be free from race, gender and age based discrimination in her place of work.

118.    As a result of such race, gender and age based discrimination, Payne-Callender suffered extreme mental and emotional distress.

119.    As a result of such race, gender and age based discrimination, Payne-Callender has lost earnings and her earning capacity has been significantly reduced.

**Count II**
**Discrimination on the Basis of Race, Gender and Age**
**(as against the City of Boston Police Department)**
**Mass. Gen. Laws c. 151B, § 4 and 29 U.S.C. § 631(a)**

120.    Payne-Callender alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 119.

121.    At all times relevant herein, Gavin was and is a supervisor with the Boston Police vested with supervisory authority.

122.    The foregoing severe, pervasive race, gender and age based discrimination maintained and/or permitted to be maintained in the workplace by the Boston Police created a hostile work

environment and deprived Payne-Callender of opportunities to advance her career that, based on merit, Payne-Callender was supremely qualified for.

123.   The Boston Police knew or should have known of the race, gender and age based discriminatory conduct towards Payne-Callender and failed to take remedial action.

124.   The actions of the Boston Police have violated Payne-Callender's right to be free from race, gender and age based discrimination in the workplace.

125.   As a result of such race, gender and age based discrimination, Payne-Callender suffered extreme mental and emotional distress.

126.   As a result of such race, gender and age based discrimination, Payne-Callender has lost earnings and her earning capacity has been significantly reduced.

**Count III**
**Hostile Workplace**
**(as against Donna M. Gavin)**
**Mass. Gen. Laws c. 151B, § 4**

127.   Payne-Callender alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 126.

128.   The foregoing severe, pervasive harassment, discrimination and abuse on the part of Gavin has aggregated over time creating a hostile work environment and unreasonably interfered and continues to interfere with Payne-Callender's work performance and career trajectory.

129.   Gavin's actions have violated Payne-Callender's right to be free of abuse, harassment and discrimination in the workplace.

130.   As a result of such abusive, harassing and discriminatory conduct, Payne-Callender suffered extreme mental and emotional distress.

131.   As a result of such abusive, harassing and discriminatory conduct, Payne-Callender has lost earnings and her earning capacity has been significantly reduced.

**Count IV**
**Hostile Workplace**
**(as against the City of Boston Police Department)**
**Mass. Gen. Laws c. 151B, § 4**

132.   Payne-Callender alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 131.

133.   At all times relevant herein, Gavin was and is a supervisor with the Boston Police vested with supervisory authority.

134.   The foregoing severe, pervasive harassment, discrimination and abuse on the part of Gavin and the Boston Police have aggregated over time creating a hostile work environment and unreasonably interfered and continues to interfere with Payne-Callender's work performance and career trajectory.

135.   Gavin's actions have violated Payne-Callender's right to be free of abuse, harassment and discrimination in the workplace.

136.   The Boston Police knew or should have known of the harassing, discriminatory and abusive conduct towards Payne-Callender and failed to take remedial action.

137.   As a result of such abusive, harassing and discriminatory conduct on the part of Gavin in her supervisory role, the Boston Police are strictly liable for Gavin's conduct towards Payne-Callender.

138.   The actions of the Boston Police have violated Payne-Callender's right to be free of abuse, harassment and discrimination in the workplace.

139.   As a result of such abusive, harassing and discriminatory conduct, Payne-Callender suffered extreme mental and emotional distress.

140.   As a result of such abusive, harassing and discriminatory conduct, Payne-Callender has lost earnings and her earning capacity has been significantly reduced.

## Count V
## Retaliation
## (as against Donna M. Gavin and the City of Boston Police Department)
## Mass. Gen. Laws c. 151B, § 4

141.   Payne-Callender alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 140.

142.   At all times relevant herein, Gavin was and is a supervisor with the Boston Police vested with supervisory authority.

143.   Gavin retaliated against Payne-Callender in violation of Mass. Gen. Laws c. 151B, § 4.

144.   The Boston Police knew or should have known of Gavin's retaliatory conduct towards Payne-Callender and failed to take remedial action.

145.   Gavin engaged in retaliatory conduct against Payne-Callender because she testified in cooperation with the Internal Affairs investigation of the competing Gavin and Capt. Det. Hayes complaints.

146.   Payne-Callender's testimony regarding the competing Gavin and Capt. Det. Hayes complaints was legally protected conduct as defined by Mass. Gen. Laws c. 151B.

147.   After Payne-Callender testified, she suffered adverse employment action at the hands of Gavin, including, but not limited to, Gavin using her position of authority to attempt initiation of disciplinary action against Payne-Callender as a result of the 2017 Civilian Incident; and, Gavin using her position of authority to attempt to limit Payne-Callender's ability to advance her career and obtain a promotion.

148.   This adverse change in Payne-Callender's employment created a material disadvantage to her employment with the Boston Police.

149.   Gavin continues to retaliate against Payne-Callender after she filed her harassment claim against Gavin on September 8, 2017 and her MCAD Complaint on June 28, 2018.   Gavin

actively prevented Payne-Callender from utilizing the "chain of command" by avoiding Payne-Callender and her office, a "complaint" Gavin has lodged against Payne-Callender time and time again.

150.    Gavin's retaliatory acts directly sabotaged Payne-Callender's work performance and opportunities for career advancement.

151.    As a result of such retaliatory conduct, Payne-Callender suffered and continues to suffer extreme mental and emotional distress.

152.    As a result of such retaliatory conduct, Payne-Callender has lost earnings and her earning capacity has been significantly reduced.

**Count VI**
**Retaliation**
**(as against the City of Boston Police Department)**
**Mass. Gen. Laws c. 151B, § 4**

153.    Payne-Callender alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 152.

154.    The Boston Police retaliated against Payne-Callender in violation of Mass. Gen. Laws c. 151B, § 4.

155.    The Boston Police engaged in retaliatory conduct against Payne-Callender because she filed a complaint with the MCAD.

156.    In filing her MCAD Complaint, Payne-Callender engaged in legally protected conduct as defined by Mass. Gen. Laws c. 151B.

157.    After Payne-Callender filed the MCAD Complaint she suffered adverse employment action at the hands of the Boston Police, including, but not limited to, unreasonably delaying the investigation into her 2017 Internal Affairs Complaint; an unwarranted Internal Affairs Complaint against Payne-Callender for exercising her right to be free from discrimination;

takings steps to discourage Payne-Callender from seeking off-duty employment; and, keeping her under the supervision of Gavin.

158.    These adverse changes in Payne-Callender's employment created a material disadvantage to her employment with the Boston Police.

159.    As a result of such retaliatory conduct, Payne-Callender suffered and continues to suffer extreme mental and emotional distress.

160.    As a result of such retaliatory conduct, Payne-Callender has lost earnings and her earning capacity has been significantly reduced.

**Count VII**
**Discrimination Based Upon Sham Investigation**
**into Payne-Callender's 2017 Internal Affairs Complaint**
**(as against the City of Boston Police Department)**
**Mass. Gen. Laws c. 151B, § 4(4A)**

161.    Payne-Callender alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 160.

162.    At all times relevant herein, Gavin was and is a supervisor with the Boston Police vested with supervisory authority.

163.    The Boston Police discriminated against Payne-Callender in violation of Mass. Gen. Laws c. 151B, § 4(4A), because it knew or should have known of Gavin's harassing, discriminatory, abusive and retaliatory conduct towards Payne-Callender and yet intentionally failed to take adequate steps to investigate and remedy the situation between Payne-Callender and Gavin – even after Payne-Callender filed her Internal Affairs Complaint.

164.    The Boston Police continue to engage in discriminatory conduct towards Payne-Callender by failing to conduct a meaningful investigation into, and issuing *any* finding on, her September 8, 2017 Internal Affairs Complaint against Gavin.  The only "investigation" that

the Boston Police have conducted to-date amounts to nothing more than a sham delay scheme designed to give itself room to negotiate a separately filed lawsuit by Gavin herself; this opposed to a fair and "by the book" look into Payne-Callender's claims of discrimination against Gavin – to the sole detriment of Payne-Callender.

165.   This sham investigation interferes with Payne-Callender's right to be protected under Mass. Gen. Laws c. 151B, § 4(4A) from discrimination due to her exercise of her right to complain about Gavin's actions.

166.   The failure to enforce Department rules and policies equally against all employees has resulted in disparate and discriminatory treatment of Payne-Callender.

167.   The failure to fully investigate and protect Payne-Callender from Gavin's harassing and retaliatory conduct violates Mass. Gen. Laws c. 151B, § 4(4A).

168.   As a result of such sham investigation, Payne-Callender suffered extreme mental and emotional distress.

169.   As a result of such sham investigation, Payne-Callender has lost earnings and her earning capacity has been significantly reduced.

### Count VIII
### Discrimination Based Upon Sham Investigation
### into Payne-Callender's 2018 MCAD Complaint
### (as against the City of Boston Police Department)
### Mass. Gen. Laws c. 151B, § 4(4A)

170.   Payne-Callender alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 169.

171.   The Boston Police discriminated against Payne-Callender in violation of Mass. Gen. Laws c. 151B, § 4(4A), because its newly opened "investigation" into Payne-Callender's MCAD

Complaint is a sham undertaken to harass, discriminate, abuse and retaliate against her for filing the MCAD Complaint.

172.   The real reason behind the October, 2018 interrogation commanded by the Internal Affairs Division was to harass, discriminate, abuse and retaliate against Payne-Callender in an effort to coerce her to drop the MCAD Complaint.

173.   The real reason behind Sgt. Estevez's attempt to re-interrogate Payne-Callender was to harass, discriminate, abuse and retaliate against Payne-Callender in an additional effort to coerce her to drop the MCAD Complaint.

174.   The pretextual, sham "investigation" into Payne-Callender MCAD Complaint violates Mass. Gen. Laws c. 151B, § 4(4A).

175.   This sham investigation interferes with Payne-Callender's right to be protected under Mass. Gen. Laws c. 151B, § 4(4A) from discrimination due to her exercise of her right to complain about Gavin's and the Boston Police's actions.

176.   As a result of such sham investigation, Payne-Callender suffered extreme mental and emotional distress.

177.   As a result of such sham investigation, Payne-Callender has lost earnings and her earning capacity has been significantly reduced.

**Count IX**
**Intentional Infliction of Emotional Distress**
**(as against Donna M. Gavin and the City of Boston Police Department)**

178.   Payne-Callender alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 177.

179.   The Defendants intended to cause Payne-Callender emotional distress by harassing, discriminating, abusing and retaliating against her as described herein.

180.    The Defendants acted – and continue to act – in an extreme and outrageous way, in a manner that can only be described as beyond the bounds of decency and utterly intolerable in a civilized community.

181.    The intentional acts and omissions of the Defendants are the direct cause of Payne-Callender's extreme emotional distress.

182.    As a result of Defendants' intentional infliction of extreme emotional distress, Payne-Callender suffered damages.

**Count X**
**Negligent Infliction of Emotional Distress**
**(as against Donna M. Gavin and the City of Boston Police Department)**

183.    Payne-Callender alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 182.

184.    The Defendants knew or should have known that emotional distress would result from their harassing, discriminatory, abusive and retaliatory actions against Payne-Callender as described herein.

185.    The Defendants' conduct alleged herein was extreme and outrageous.

186.    The Defendants' conduct caused Payne-Callender severe emotional distress.

187.    Payne-Callender has suffered severe emotional distress manifesting in overwhelming physical stress, anxiety, fatigue and depression, which negatively impact Payne-Callender's daily standard of living.

188.    As a result of Defendants' negligent infliction of severe emotional distress, Payne-Callender suffered damages.

**JURY DEMAND**

The Plaintiff demands a trial by jury on all issues raised herein.

Dated April 17, 2019.                    The Plaintiff,

                                         G. RENEE PAYNE-CALLENDER,

                                         By her Attorneys,

                                         _Michelle Byrs_
                                         Jeremy Y. Weltman (BBO No. 662293)
                                         jweltman@hermesnetburn.com
                                         Michelle M. Byers (BBO No. 684836)
                                         mbyers@hermesnetburn.com
                                         HERMES, NETBURN, O'CONNOR &
                                              SPEARING, P.C.
                                         265 Franklin Street, Seventh Floor
                                         Boston, Massachusetts 02110-3113
                                         (617) 728-0050 (tel)
                                         (617) 728-0052 (fax)


### VERIFICATION

I, G. Renee Payne-Callender, Plaintiff in the above-captioned matter, hereby certify under the pains and penalties of perjury that I have fully read the within _Verified Complaint and Jury Demand_ and that the facts stated therein are true and accurate to the best of my knowledge.

Dated: **4·17·2019**                     _G. Renee Payne-Callender_
                                         G. Renee Payne-Callender

{B0091039.1}    31

# EXHIBIT A

The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place , Boston, MA 02108
Phone:  (617) 994-6000 Fax:  (617) 994-6024

---

MCAD DOCKET NUMBER: 18BEM01930   EEOC/HUD CHARGE NUMBER: 16C-2018-02035
FILING DATE: 06/28/18   VIOLATION DATE: 07/12/18

---

Name of Aggrieved Person or Organization:
G. Renee Payne-Callender
300 Ashmont Street
Boston, MA 02114
Primary Phone: (617)282-3429 ext. ____

---

Named is the employer, labor organization, employment agency, or state/local government agency who discriminated against me:
City of Boston Police Department
Attn.: Director of Human Resources
One Schroeder Plaza
Boston, MA 02120


Donna M Gavin
City of Boston Police Department
Attn.: Director of Human Resources
One Schroeder Plaza
Boston, MA 02120


No. of Employees:       25+
Work Location:         Boston

---

Cause of Discrimination based on:
Age, Sex, Race, Retaliation.

---

The particulars are:
I, G. Renee Payne-Callender, the Complainant believe that I was discriminated against by City of Boston Police Department, Donna M Gavin, on the basis of Age, Sex, Race, Color, Retaliation. This is in violation of M.G.L. c. 151B Section 4 Paragraph 1, 1B, 4, 4A and ADEA, Title VII.

Please see attached.

---

I hereby verify, under the pains and penalties of perjury, that I have read this complaint and the allegations contained herein are true to the best of my knowledge.


_____
(Signature of Complainant)

MCAD Docket Number 18BEM01930, Complaint

MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION

|  |  |
|---|---|
| G. RENEE PAYNE-CALLENDER, | ) |
| Plaintiff, | ) |
| v. | ) |
| DONNA M. GAVIN and CITY OF BOSTON POLICE DEPARTMENT, | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT

This case concerns discrimination, retaliation, and harassment suffered by the Plaintiff, Detective G. Renee Payne-Callender ("Payne-Callender"), at the hands of the Defendants, Lieutenant Detective Donna M. Gavin ("Gavin") and the City of Boston Police Department. Payne-Callender, an African-American woman, has been an officer and detective in the predominantly white male Boston Police Department for almost 33 years. She has an exemplary record of victim advocacy, resilience in her fight against human trafficking and crimes against children, and investment in the neighborhoods within the City of Boston.

Payne-Callender began her career in 1985 as a police dispatcher. By the end of 1986, she attained the rank of police officer; she was promoted to detective in 1998. Payne-Callender's exemplary career trajectory continued over the next decade; she investigated domestic violence allegations for the Sexual Assault Unit, she worked alongside the FBI in the Bureau of Field Services, and in 2007 she was transferred to the Boston Police Department Family Justice Center's prestigious Human Trafficking Unit. From 2007 to 2009, Payne-Callender thrived in the Human Trafficking Unit. However, everything changed in 2009 when then-Sergeant

Detective Donna Gavin joined the Human Trafficking Unit as Payne-Callender's supervising Sergeant. All of a sudden, Payne-Callender's positive career progression ceased.

In her time under Gavin, Payne-Callender was continuously subjected to discrimination on the basis of race, gender, and age, which resulted in a hostile work environment. Payne-Callender brought the discrimination to the Boston Police Department's attention, yet no action was taken to remediate the situation; instead, it was pushed under the proverbial rug. In 2011, Gavin transferred Payne-Callender out of the Human Trafficking Unit even though Payne-Callender was the Unit's most qualified detective. Payne-Callender was eventually re-assigned to the Crimes Against Children Unit, where she was no longer under Gavin's direct supervision. However, because the Crimes Against Children Unit was, along with the Human Trafficking Unit, part of the Family Justice Center, Payne-Callender remained under the purview of Gavin's influence.

Payne-Callender's complaints about Gavin, the Boston Police Department Family Justice Center's sole female Lieutenant Detective, and the public face of the Police Department's "integration" of women into the higher ranks of the force, permanently damaged Payne-Callender's career. Further, because of Gavin's influence throughout the Family Justice Center, and the close proximity within which the Human Trafficking Unit and the Crimes Against Children Unit work, Payne-Callender continues to face a hostile work environment due to racial, gender, and age discrimination at the hands of both Gavin and the Boston Police Department.

In addition, the City of Boston Police Department has known of Gavin's discrimination towards Payne-Callender and has taken no steps to protect her, choosing instead, to turn a blind eye. The minimal effort the City of Boston Police Department has placed into investigating Payne-Callender's allegations amounts to a sham investigation designed to protect itself and

Gavin and cause deliberate harm to Payne-Callender.   Payne-Callender, therefore, brings this action seeking compensatory and other damages, as further outlined herein.

## PARTIES

1.  The Plaintiff, Detective G. Renee Payne-Callender ("Payne-Callender"), is an individual residing at 300 Ashmont Street, Dorchester, Suffolk County, MA 01214.  Payne-Callender is a fifty-five year old African-American woman.  At all relevant times herein, Payne-Callender is and has been a Detective with the City of Boston Police Department.

2.  The Defendant, Lieutenant Detective Donna M. Gavin ("Gavin"), is an individual residing at 88 Wharf Street, Milton, Norfolk County, MA 02186.  Gavin is employed by Defendant City of Boston Police Department as a Lieutenant Detective.

3.  The Defendant, City of Boston Police Department ("Boston Police"), is a department with the City of Boston with its headquarters located at One Schroeder Plaza, Roxbury Crossing, Suffolk County, MA 02120.

## JURISDICTION AND VENUE

4.  Jurisdiction is conferred upon this Court pursuant to the provisions of Mass. Gen. Laws c. 212, §§ 3 and 4.  Venue in Suffolk County is proper pursuant to Mass. Gen. Laws c. 223, § 1.

## FACTS

5.  Payne-Callender is employed as a detective with the Boston Police Department.  She has been employed by the Boston Police for almost 33 years.  She has served as a detective in the Bureau of Field Services, the Bureau of Investigative Services, the Bureau of Professional Standards and Development, and the Family Justice Center. Within the Family Justice Center, Payne-Callender has worked as a detective in the Domestic Violence Unit, the Sexual

Assault Unit, and the Human Trafficking Unit.  Payne-Callender is currently a detective in the Crimes Against Children Unit, which is also within the Family Justice Center.

6. Payne-Callender has received numerous accolades and commendations in the course of her career.  She has been recognized for, among other things, her work with the Human Trafficking Unit, assisting the Suffolk County District Attorney's Office with the successful prosecution of serious criminal matters, and her dedication to outreach and programs to improve the Boston community.  Payne-Callender's personnel record reflects her exemplary work performance and her efforts to seek out continuing education to better perform her duties as a Boston Police detective.

7. On December 15, 2007, Payne-Callender was assigned to the Human Trafficking Unit of the Boston Police Bureau of Investigative Services.  While in the Human Trafficking Unit, she held the role of Human Trafficking Task Force Officer with the FBI with Special-Duty U.S. Marshal ability.  At all times relevant herein, Payne-Callender was and is the most qualified detective within the Boston Police to hold these positions.

8. On July 18, 2009, the Defendant Donna M. Gavin, holding at that time the rank of Sergeant Detective, was reassigned from the Sexual Assault Unit to the Family Justice Division (both within the Bureau of Investigative Services).  Gavin became Payne-Callender's immediate supervisor.  Gavin's work schedule was Monday through Friday, 7:30 a.m. to 4:00 p.m.; Payne-Callender's schedule was Monday through Friday, 4:00 p.m. to 11:45 p.m.  Payne-Callender had no direct supervisor while on duty.  Without a direct supervisor, Payne-Callender was required from time to time to call Gavin on her department-issued cell phone.  Gavin would not answer Payne-Callender's calls, all of which related to active criminal

investigations.  By ignoring Payne-Callender's calls, Gavin made it impossible for Payne-Callender to adequately perform her job duties and adhere to reporting requirements.

### *The City Councilor Incident*

9.  On Friday, September 24, 2010, Payne-Callender, while working in the Human Trafficking Unit, received a telephone call from City Councilor Ayanna Pressley stating she was approached by a black male regarding prostitution at the Back Bay MBTA station.  Payne-Callender called Gavin numerous times on her cellphone, but Gavin did not answer.  Because Gavin did not answer, Payne-Callender contacted Sergeant Detective Daniel Keeler and informed him of the telephone call she had received from City Councilor Pressley.  Sgt. Det. Keeler, Boston Police detectives from District D-4, and Payne-Callender searched the Back Bay MBTA station and did not locate the reporting party.

10. Despite not answering the numerous telephone calls from Payne-Callender, on Saturday, September 25, 2010, Gavin contacted Payne-Callender and accused her of failing to follow the protocol for notifying her supervisor.

11. On Monday, September 27, 2010, Gavin brought Payne-Callender before Deputy Superintendent Kelly Nee accusing Payne-Callender of failing to notify Gavin of Councilor Pressley's encounter.  Payne-Callender was reprimanded and directed to notify Gavin of all incidents immediately.  The fact that Gavin did not answer her cell phone when Payne-Callender called was not addressed.

12. Gavin's accusations humiliated Payne-Callender in front of Dep. Sup. Nee and started what has become a long and continuous history of Gavin's harassing and discriminatory behavior creating a hostile workplace within which Payne-Callender was required to work.

### *The State Police Incident*

13. On Thursday, May 19, 2011, Payne-Callender received a telephone call from the Massachusetts State Police asking for assistance from the Boston Police Human Trafficking Unit with responding to an allegation of sex trafficking of a young female at the Best Western Inn in Quincy, Massachusetts.   Payne-Callender was out-of-state investigating another matter and could not respond.

14. Heeding Dep. Sup. Nee and Gavin's directive that Gavin must be immediately notified of all incidents, Payne-Callender directed the State Police to call Gavin's cellphone directly and provided her phone number.

15. On Friday, May 20, 2011, Payne-Callender told Gavin she directed the State Police to call Gavin directly about the sex trafficking incident.   Gavin told Payne-Callender she did not speak with the State Police.

16. On Saturday, May 21, 2011, Gavin called Payne-Callender and questioned her about the sex trafficking incident.   Payne-Callender again told Gavin she directed the State Police to call Gavin directly.

17. On Wednesday, May 25, 2011, Gavin brought Payne-Callender before Captain Detective Mark Hayes accusing her of failing to notify Gavin of the sex trafficking incident.   Gavin stated she could not manage Payne-Callender.   Gavin further stated she did not like Payne-Callender.

18. Again, Gavin humiliated Payne-Callender with baseless accusations, this time in front of Capt. Det. Hayes.

19. Despite Gavin's clear animosity and dislike for Payne-Callender, Capt. Det. Hayes did nothing to protect Payne-Callender from Gavin's harassment or relieve her from reporting

directly to Gavin.  Instead, Gavin was allowed to transfer Payne-Callender out of the Human Trafficking Unit in retaliation for Gavin disclosing to Hayes that it was Gavin that failed to answer her phone that was the problem -- not Payne-Callender's alleged failure to report. Gavin did not provide a reasonable or nondiscriminatory basis why Payne-Callender was being transferred or to which Unit she would go; however, it became increasingly clear to Payne-Callender that Gavin harbored discriminatory animus toward her on the basis of race, gender and age.

20. Payne-Callender met with Dep. Sup. Nee on June 1, 2011 to determine where Payne-Callender would be transferred.

21. Payne-Callender requested a transfer to the Special Investigations Unit, a Unit with zero African-American female detectives, and was simply told "no."  No further reason was given.

22. After being denied a transfer to the Special Investigations Unit, Payne-Callender requested to be transferred to the Crimes Against Children Unit, which is housed in the same building as Gavin's Human Trafficking Unit.

23. Gavin tried to prevent Payne-Callender from working in the same building by pressuring Dep. Sup. Nee into reassigning Payne-Callender to another District rather than a Unit in the Family Justice Center.  In pressuring Dep. Sup. Nee, Gavin acted to prevent Payne-Callender from holding a position within the Boston Police commensurate with her training and experience.

24. Gavin's actions were an attempt to materially and objectively change the conditions of Payne-Callender's employment, subjecting her to adverse employment conditions and

marginalizing Payne-Callender's position within the Boston Police for no other reason than because of her gender, race and age.

25. Gavin's conduct was and is a part of an ongoing pattern of harassing and discriminatory behavior creating a hostile workplace within which Payne-Callender was required to work. Gavin's ongoing harassment and discrimination caused Payne-Callender to dread coming to work each day.

### *2014 Unreasonable Withholding of Training Incident*

26. On August 26, 2014, Payne-Callender submitted a request to Capt. Det. Hayes to attend the "Human Trafficking Train the Trainer" professional development seminar put on by the Municipal Police Training Committee on September 8, 2014.  Payne-Callender made this request because she was the most knowledgeable and experienced detective in the area of human trafficking at the Boston Police and would greatly benefit from continuing education and training in the field.

27. Gavin attempted to block Payne-Callender from attending the training seminar for no valid reason other than her discriminatory animus toward Payne-Callender.

28. As a pretext for her discrimination of Payne-Callender, Gavin argued to Capt. Det. Hayes that Payne-Callender could not go to the training seminar because she was not a member of the Human Trafficking Unit anymore.

29. Capt. Det. Hayes recognized that while Payne-Callender did not work in the Human Trafficking Unit, there were no other detectives in the Human Trafficking Unit better qualified than her, and granted her request to apply to and attend the seminar.

30. Gavin's blatant, intentional discrimination unreasonably interfered with Payne-Callender's ability to do her job.

31. Gavin's conduct in this instance was and is part of an ongoing pattern of discriminatory behavior creating a hostile workplace within which Payne-Callender was required to work, and about which the Boston Police Department did nothing to address.

### 2014 Sergeant's Exam

32. In an attempt to advance her career and solidify a well-earned promotion, Payne-Callender registered to take the Boston Police Department's sergeant's exam in 2014.

33. Due to a death in her family, Payne-Callender had to travel outside the country to attend funeral services at the time in which the sergeant's exam was scheduled to take place.

34. Payne-Callender petitioned the Boston Police to take the exam early and her request was denied.  Payne-Callender was told by former Director of Human Resources for the Boston Police, Edward P. Callahan, that the only police officers allowed to take the sergeant's exam at a different time were those that could not take the test due to active duty military commitments outside of the country.

35. Payne-Callender subsequently learned that the Boston Police granted the requests of two other male officers to take the sergeant's exam at a different time, neither request being based on an active duty military commitment out of the country.

### 2017 Human Trafficking and Exploitation Training

36. The Boston Police work in conjunction with the Suffolk County District Attorney's Office to investigate and prosecute human trafficking and exploitation crimes.  On December 21, 2016, Maryrose Anthes, Chief of the Human Trafficking and Exploitation Unit within the District Attorney's Office, sent an email to 17 people requesting that they save the date of February 15, 2017, for a free human trafficking and exploitation training session involving

the District Attorney's Office and certain Boston Police employees. Payne-Callender was a recipient of this email.

37. On February 14, 2017, the day before the training, Gavin sent an email to Payne-Callender stating "Renee, Please disregard the training that you were sent a save the date for. Your attendance is not required." Gavin did not explain why she instructed Payne-Callender not to attend the free training.

38. On February 15, 2017, Payne-Callender and Detective Michael Sullivan, another detective in the Crimes Against Children Unit, notified their immediate supervisor Sergeant Detective Brian Miller and Capt. Det. Hayes that Gavin was prohibiting them from attending the free training with no given reason.

39. Upon information and belief, the training attendees were told that there was not enough space in the training room for Payne-Callender and Det. Sullivan to participate. This excuse was not true.

40. Gavin's discrimination of Payne-Callender on the basis of her age, race and gender prohibited Payne-Callender from engaging in training designed to improve her performance as a detective and increase her chance for promotion. Gavin's act of prohibiting Payne-Callender from attending the free training was not addressed by Sgt. Det. Miller, Capt. Det. Hayes, or any other Boston Police supervisor; rather, it was again swept under the proverbial rug.

41. Gavin's conduct in this instance was and is a part of an ongoing pattern of discrimination against Payne-Callender on the basis of her race, gender and age. Gavin's continuous discriminatory conduct towards Payne-Callender created a hostile work environment.

### *2017 Gavin and Captain Detective Hayes Complaints*

42. On April 24, 2017, Gavin filed a formal complaint with Boston Police Internal Affairs against Capt. Det. Hayes for harassment, hostile work environment, gender discrimination, and retaliation.

43. On May 16, 2017, Capt. Det. Hayes filed a formal complaint with Internal Affairs against Gavin for neglect of duty and directives or orders.

44. On May 17, 2107, Gavin was removed from the chain of command and instructed to stop reporting to Capt. Det. Hayes and to report to Deputy Superintendent Norma Ayala. It is the customary and usual practice of the Boston Police to remove a complainant or the aggressor from the chain of command once a complaint is filed.

45. During the course of the investigation into the competing complaints, Sergeant Detective Richard Dahill interviewed Payne-Callender about the events underlying the complaints. The interview was audio recorded. During the interview, Payne-Callender expressed her fear that Gavin would retaliate against her for cooperating with the investigation.

46. Payne-Callender's fear of retaliation was never addressed.

### *2017 Civilian Incident*

47. Gavin's continuous discrimination and retaliation of Payne-Callender came to a head in August and September, 2017.

48. On August 15, 2017, a virus was detected on Payne-Callender's work computer. She notified the Boston Police's Information Systems Group ("ISG") and an ISG member serviced the computer the following morning.

49. On August 16, 2017, after waiting two hours at the direction of the ISG member, Payne-Callender restarted her computer. At approximately 1:34 p.m., Sergeant Detective Thomas

Lembo walked into Payne-Callender's office and directed her to unplug her computer. Sgt. Det. Lembo then handed her a printed email addressed to civilian clerk Janet Dougherty of the Human Trafficking Unit. The email, dated August 16, 2017 and timestamped 12:34 p.m., asked Ms. Dougherty to disconnect Payne-Callender's computer from the system due to the presence of a virus. Payne-Callender called ISG and learned that the email to Ms. Dougherty was a second request to unplug her computer because of the presence of a virus.

50. Given the nature of the email's importance, Payne-Callender requested and received permission from Sgt. Det. Lembo to address the manner and delay in which the email was delivered to her. Payne-Callender went to the Human Trafficking Unit office and spoke with Sergeant Kathy Doris. She requested that Sgt. Doris instruct Human Trafficking Unit personnel to forward emails meant for Payne-Callender directly to her, rather than delaying delivery of the email by providing a copy to a supervisor. Sgt. Doris agreed to this request.

51. Immediately following Payne-Callender's conversation with Sgt. Doris, Ms. Dougherty initiated a verbal exchange with Payne-Callender in an aggressive manner. Payne-Callender walked out of the Human Trafficking Unit and did not engage with Ms. Dougherty. Gavin was not on duty or present in the Human Trafficking Unit at the time of the incident. Payne-Callender returned to the Crimes Against Children Unit and reported the incident to Sgt. Det. Lembo.

52. After a discussion between Sgt. Det. Lembo and Sgt. Doris, they determined the incident did not require narrative reports ("Form 26 Reports") documenting it from the parties or witnesses.

53. On August 17, 2017, Payne-Callender spoke to Capt. Det. Hayes about the incident with Ms. Dougherty and he agreed with and confirmed the decision of Sgt. Det. Lembo and Sgt. Doris that no Form 26 Reports were required.

54. Sometime later on August 17, 2017, Payne-Callender observed Gavin and Ms. Dougherty leave the Family Justice Center together. When Ms. Dougherty returned to the Family Justice Center, she refused to speak with Sgt. Doris but rather handed her a Form 26. Sgt. Doris took the Form 26 to Capt. Det. Hayes, at which time Capt. Det. Hayes stated that everyone in the Human Trafficking Unit (including Plaintiff) must now submit a Form 26.

55. On September 5, 2017, Sgt. Det. Lembo informed Payne-Callender that he was asked by Gavin to **rewrite** his Form 26 Report for submission to Human Resources and **remove facts** about the incident with Ms. Dougherty because his original Report would "open up a can of worms."

56. On September 6, 2017, Payne-Callender met with Capt. Det. Hayes, Sgt. Det. Lembo, and Sgt. Det. Miller and learned that Gavin had submitted only Ms. Dougherty's Form 26 Report to Human Resources and had not submitted the seven other Form 26 Reports related to the incident.

57. Gavin did not attempt to speak with Payne-Callender about the incident with Ms. Dougherty, nor did she inform anyone about her submission of only Ms. Dougherty's Form 26 Report (despite having reviewed all eight Form 26 Reports on August 22, 2017).

58. Gavin's obfuscation of the facts in this instance was a deliberate attempt to smear Payne-Callender and is evidence of the type of discriminatory behavior that Payne-Callender has had to endure at the hands of Gavin. Gavin's discriminatory actions caused Payne-Callender to come under investigation by Human Resources, unreasonably interfering with Payne-

Callender's work performance.  Gavin was retaliating against her for cooperating with the investigation into the competing complaints between Gavin and Capt. Det. Hayes.

59. If Payne-Callender was white, or a male, she would not have been subjected to Gavin's humiliating and discriminatory acts.

60. If Payne-Callender was white, or a male, the Boston Police would have taken action against Gavin immediately for her discriminatory conduct towards Payne-Callender.

61. Gavin's insidious act of withholding relevant Form 26 Reports from Human Resources was and is a part of an ongoing pattern of discriminatory behavior and abuse creating a hostile workplace for Payne-Callender.

### *Payne-Callender's September 8, 2017 Internal Affairs Complaint*

62. Due to the continuous discrimination and retaliation on the part of Gavin, in particular her actions regarding the 2017 Civilian Incident, and the Boston Police Department's failure to take steps to protect Payne-Callender from Gavin's discriminatory and retaliatory conduct, Payne-Callender was compelled to file a formal "Harassment and Hostile Work Environment" claim against Gavin with the Boston Police Internal Affairs Division.

63. On September 8, 2017, Payne-Callender met with Sergeant Detective John McDonough, formerly of the Internal Affairs Division, to file a complaint against Gavin.  Sgt. Det. McDonough informed Payne-Callender that he was retiring and would not take a new case. He told Payne-Callender that he would write a synopsis of her complaint but would not take a recorded interview, and would pass it onto another officer in the department.

64. A meaningful investigation into Internal Affairs complaints includes, in part, the procedures set forth in Boston Police Rule and Procedures No. 114 titled "Sexual Harassment, Discrimination, Harassment, and Retaliation Policy and Complaint Procedure."  The

investigation conducted by Internal Affairs on behalf of Payne-Callender was certainly not meaningful.

65. On September 12, 2017, Payne-Callender spoke with Sergeant Detective Michael Talbot regarding her complaint against Gavin. Payne-Callender learned from Sgt. Det. Talbot that Superintendent Frank Mancini falsely reported that he spoke with Payne-Callender about the investigation into her complaint. Payne-Callender did not speak with Super. Mancini about Gavin at any time.

66. On September 15, 2017, Deputy Superintendent Jeffrey Walcott called Payne-Callender to schedule an interview on her claims against Gavin. Dep. Super. Walcott was not able to tell Payne-Callender who would be investigating her claims.

67. Payne-Callender's Internal Affairs interview took place on September, 19, 2017 in the presence of Lieutenant Detective Brian McEachern, Sergeant Detective Sharon Dottin and Union Attorney Scott Dunlap. During the interview, Payne-Callender stated that Sgt. Det. McDonough's synopsis prepared on September 8, 2017 was inaccurate and inconsistent with what Payne-Callender reported.

68. After the interview, Lt. Det. McEachern told Payne-Callender that the assigned Internal Affairs Investigator would contact her. Payne-Callender requested immediate remedial action to protect her from discriminatory conduct, the hostile working conditions, and retaliation. Lt. Det. McEachern did not provide Payne-Callender any assurance that remedial action would be taken to remove her from the chain of command, despite the Department's usual and customary policy of removing a complainant or the aggressor from the chain of command once a complaint is filed.

69. On October 5, 2017, Payne-Callender learned from Capt. Det. Hayes that Sergeant Detective Brian Riley of Internal Affairs was assigned to investigate her complaint. Payne-Callender was never contacted by Sgt. Det. Riley despite Lt. Det. McEachern's representation that she would be contacted directly.

70. Payne-Callender repeatedly has been told that Internal Affairs is "investigating" her claim against Gavin, but have not reached a conclusion and are unable to tell Payne-Callender when the investigation will be completed. Upon information and belief, there are now three other internal affairs complaints against Gavin for creating a hostile workplace and other discriminatory acts and abuses against officers, civilian employees and the Suffolk County District Attorney's Office.

71. Since Payne-Callender's formal complaint, Gavin brought suit in Norfolk Superior Court against the Boston Police and Capt. Det. Hayes on March 16, 2018, alleging discrimination and hostile workplace claims. The case has since been removed to the U.S. District Court for the District of Massachusetts, Docket No. 1:18-cv-10819-LTS.

72. To date, Internal Affairs has taken no action to protect Payne-Callender or legitimately investigate her claims. The Boston Police investigation is a sham undertaken to delay action against Gavin that may harm its defenses in Gavin's lawsuit against it and Capt. Det. Hayes.

73. The pending litigation between the defendants to this action unreasonably prohibits Payne-Callender from obtaining a resolution of her complaint and protection from Gavin's harassment and discrimination.

74. The Boston Police's conduct in this instance is discriminatory and violates Payne-Callender's right to be free from harassment and discrimination.

*2018 Crimes Against Children Unit Emails*

75. Payne-Callender injured her foot in a workplace incident on February 27, 2018.  Payne-Callender has been out on temporary medical leave since March 14, 2018.  Despite this temporary medical leave, Payne-Callender is still a detective in the Crimes Against Children Unit and will return to the Crimes Against Children Unit when she is medically cleared to do so.

76. Gavin routinely and intentionally sends emails to all detectives in the Human Trafficking Unit and the Crimes Against Children Unit on case-related and investigatory matters.  Gavin systematically leaves Payne-Callender off of the email distribution chain of division and case-specific emails despite Payne-Callender's assignment to the Crimes Against Children Unit.

77. Payne-Callender knows this to be true because other detectives within the Crimes Against Children Unit forward Payne-Callender emails sent by Gavin that do not include her as a recipient.

78. Gavin continues her pattern of discriminatory and retaliatory conduct creating a hostile workplace within which Payne-Callender is required to work—even when Payne-Callender is on temporary leave.  Gavin's deliberate, bad faith act of leaving Payne-Callender off of official Boston Police communications severely disadvantages Payne-Callender when she returns to work.  Without being kept apprised of developments within the Crimes Against Children Unit, Payne-Callender's job performance is at risk.

79. Gavin's retaliatory conduct is a direct result of Payne-Callender's protected conduct, namely cooperating with the Internal Affairs investigation into the competing Gavin and Capt. Det. Hayes complaints and Payne-Callender's complaint against Gavin.

80. All of the foregoing actions on the part of Gavin and the Boston Police are part of a continuing course of conduct amounting to years of discrimination, retaliation, and abuse sustained by Payne-Callender.

**Count I**
**Discrimination on the Basis of Race, Gender and Age**
**(as against Donna M. Gavin)**
**Mass. Gen. Laws c. 151B, § 4 and 29 U.S.C. § 631(a)**

81. Payne-Callender alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 80.

82. The foregoing severe, pervasive race, gender and age based discrimination by Gavin created a hostile work environment and deprived Payne-Callender of opportunities to advance her career that, based on merit, Payne-Callender was supremely qualified for.

83. Gavin's actions have violated Payne-Callender's right to be free from race, gender and age based discrimination in her place of work.

84. As a result of such race, gender and age based discrimination, Payne-Callender suffered extreme mental and emotional distress.

85. As a result of such race, gender and age based discrimination, Payne-Callender has lost earnings and her earning capacity has been significantly reduced.

**Count II**
**Discrimination on the Basis of Race, Gender and Age**
**(as against the Boston Police Department)**
**Mass. Gen. Laws c. 151B, § 4 and 29 U.S.C. § 631(a)**

86. Payne-Callender alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 85.

87. At all times relevant herein, Gavin was and is a supervisor with the Boston Police vested with supervisory authority.

88. The foregoing severe, pervasive race, gender and age based discrimination maintained and/or permitted to be maintained in the work place by the Boston Police Department created a hostile work environment and deprived Payne-Callender of opportunities to advance her career that, based on merit, Payne-Callender was supremely qualified for.

89. The Boston Police knew or should have known of race, gender and age based discriminatory conduct towards Payne-Callender and failed to take remedial action.

90. The Boston Police Department's actions have violated Payne-Callender's right to be free from race, gender and age based discrimination in the work place.

91. As a result of such race, gender and age based discrimination, Payne-Callender suffered extreme mental and emotional distress.

92. As a result of such race, gender and age based discrimination, Payne-Callender has lost earnings and her earning capacity has been significantly reduced.

**Count III**
**Hostile Workplace**
**(as against Donna M. Gavin)**
**Mass. Gen. Laws c. 151B, § 4**

93. Payne-Callender alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 92.

94. The foregoing severe, pervasive harassment, discrimination and abuse on the part of Gavin have aggregated over time creating a hostile work environment and unreasonably interfered and continues to interfere with Payne-Callender's work performance and career trajectory.

95. Gavin's actions have violated Payne-Callender's right to be free of abuse, harassment and discrimination in the workplace.

96. As a result of such abusive, harassing and discriminatory conduct, Payne-Callender suffered extreme mental and emotional distress.

97. As a result of such abusive, harassing and discriminatory conduct, Payne-Callender has lost

earnings and her earning capacity has been significantly reduced.

## Count IV
### Hostile Workplace
### (as against The City of Boston Police Department)
### Mass. Gen. Laws c. 151B, § 4

98. Payne-Callender alleges and incorporates by reference the allegations set forth in Paragraphs

1 through 97.

99. At all times relevant herein, Gavin was and is a supervisor with the Boston Police vested

with supervisory authority.

100.    The foregoing severe, pervasive harassment, discrimination and abuse on the part of

Gavin have aggregated over time creating a hostile work environment and unreasonably

interfered and continues to interfere with Payne-Callender's work performance and career

trajectory.

101.    Gavin's actions have violated Payne-Callender's right to be free of abuse, harassment and

discrimination in the workplace.

102.    The Boston Police knew or should have known of Gavin's harassing, discriminatory and

abusive conduct towards Payne-Callender and failed to take remedial action.

103.    As a result of such abusive, harassing and discriminatory conduct on the part of Gavin in

her supervisory role, the Boston Police are strictly liable for Gavin's conduct towards Payne-

Callender.

104.    As a result of such abusive, harassing and discriminatory conduct, Payne-Callender

suffered extreme mental and emotional distress.

105.    As a result of such abusive, harassing and discriminatory conduct, Payne-Callender has

lost earnings and her earning capacity has been significantly reduced.

**Count V**
**Retaliation**
**(as against Donna M. Gavin and The Boston Police Department)**
**Mass. Gen. Laws c. 151B, § 4**

106.   Payne-Callender alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 105.

107.   At all times relevant herein, Gavin was and is a supervisor with the Boston Police vested with supervisory authority.

108.   Gavin retaliated against Payne-Callender in violation of Mass. Gen. Laws c. 151B, § 4.

109.   The Boston Police knew or should have known of Gavin's retaliatory conduct towards Payne-Callender and failed to take remedial action.

110.   Gavin engaged in retaliatory conduct against Payne-Callender because she testified in cooperation with the Internal Affairs investigation of the competing Gavin and Capt. Det. Hayes complaints.

111.   Payne-Callender's testimony regarding the competing Gavin and Capt. Det. Hayes complaints was legally protected conduct as defined by Mass. Gen. Laws c. 151B.

112.   After Payne-Callender testified, she suffered adverse employment action at the hands of Gavin, including, but not limited to, Gavin using her position of authority to attempt initiation of disciplinary action against Payne-Callender as a result of the 2017 Civilian Incident; and, Gavin using her position of authority to attempt to limit Payne-Callender's ability to advance her career and obtain a promotion.

113.   This adverse change in Payne-Callender's employment created a material disadvantage to her employment with the Boston Police.

114.   Gavin continues to retaliate against Payne-Callender after she filed her harassment claim against Gavin on September 8, 2017. As of the date of this filing, Gavin is deliberately

withholding case and department-specific information and communications from Payne-Callender in order to sabotage Payne-Callender's work performance and career advancement.

115.    As a result of such retaliatory conduct, Payne-Callender suffered and continues to suffer extreme mental and emotional distress.

116.    As a result of such retaliatory conduct, Payne-Callender has lost earnings and her earning capacity has been significantly reduced.

**Count VI**
**Mass. Gen. Laws c. 151B, § 4(4A)**
**Discrimination Based Upon Sham Investigation**
**(as against the City of Boston Police Department)**

117.    Payne-Callender alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 116.

118.    At all times relevant herein, Gavin was and is a supervisor with the Boston Police vested with supervisory authority.

119.    The Boston Police discriminated against Payne-Callender in violation of Mass. Gen. Laws c. 151B, § 4(4A), because it knew or should have known of Gavin's harassing, discriminatory, abusive and retaliatory conduct towards Payne-Callender and yet intentionally failed to take adequate steps to investigate and remedy the situation between Payne-Callender and Gavin - even after Payne-Callender filed her complaint.

120.    Indeed, the only "investigation" that the Boston Police have conducted to-date amounts to nothing more than a sham delay scheme designed to give itself room to negotiate a separately filed lawsuit by Gavin herself; this opposed to a fair and "by the book" look into Payne-Callender's claims of discrimination against Gavin – to the sole detriment of Payne-Callender.

121.   The Boston Police continue to engage in discriminatory conduct towards Payne-Callender by failing to conduct a meaningful investigation into, and issuing *any* finding on, her September 8, 2017 Internal Affairs Complaint against Gavin.

122.   This sham investigation interferes with Payne-Callender's right to be protected under Mass. Gen. Laws c. 151B, § 4(4A) from discrimination due to her exercise of her right to complain about Gavin's actions.

123.   Internal Affairs has done nothing to protect Payne-Callender, legitimately investigate or render a conclusion on her complaint. Unfortunately, it appears that the Boston Police "investigation" is a sham undertaken to delay action against Gavin that may harm its defenses in Gavin's separately recently filed lawsuit against it and Capt. Det. Hayes.

124.   The failure to enforce Department rules and policies equally against all employees has resulted in disparate and discriminatory treatment of Payne-Callender.

125.   The failure to fully investigate and protect Payne-Callender from Gavin's harassing and retaliatory conduct violates Mass. Gen. Laws c. 151B, § 4(4A).

126.   As a result of such sham investigation, Payne-Callender suffered extreme mental and emotional distress.

127.   As a result of such sham investigation, Payne-Callender has lost earnings and her earning capacity has been significantly reduced.

Dated: June 19, 2018.

The Plaintiff,

**G. RENEE PAYNE-CALLENDER,**

By her Attorneys,

Jeremy Y. Weltman (BBO No. 662293)
jweltman@hermesnetburn.com
Michelle M. Byers (BBO No. 684836)
mbyers@hermesnetburn.com
HERMES, NETBURN, O'CONNOR &
     SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, Massachusetts 02110-3113
(617) 728-0050 (tel)
(617) 728-0052 (fax)

## **VERIFICATION**

I, G. Renee Payne-Callender, Plaintiff in the above-captioned matter, hereby certify under the pains and penalties of perjury that I have fully read the within *Verified Complaint* and that the facts stated therein are true and accurate to the best of my knowledge.

Dated: 2/28/2018

G. Renee Payne-Callender

# EXHIBIT B

## Michelle M. Byers

| | |
|---|---|
| **From:** | Kent W. McKinley |
| **Sent:** | Monday, November 05, 2018 10:47 AM |
| **To:** | 'PublicRecordRequest@pd.boston.gov' |
| **Cc:** | Michelle M. Byers; Jeremy Y. Weltman; Kent W. McKinley |
| **Subject:** | RE: Request for Copy of Transcript of Detective G. Renee Payne-Callender's October 4, 2018 Internal Affairs Interview |

Good morning,

Please advise on the status of Detective Payne-Callender's requests for the transcripts of her Internal Affairs interviews.

Thank you

Kent McKinley

**From:** Kent W. McKinley
**Sent:** Thursday, November 1, 2018 1:34 PM
**To:** 'PublicRecordRequest@pd.boston.gov' <PublicRecordRequest@pd.boston.gov>
**Cc:** Michelle M. Byers <mbyers@hermesnetburn.com>; Jeremy Y. Weltman <jweltman@hermesnetburn.com>; Kent W. McKinley <KMcKinley@hermesnetburn.com>
**Subject:** RE: Request for Copy of Transcript of Detective G. Renee Payne-Callender's October 4, 2018 Internal Affairs Interview

Good afternoon,

I am following up regarding our request for the transcripts of Detective Payne-Callender's Internal Affairs interviews. Please advise regarding the status of our requests.

Thank you

Kent McKinley

**From:** Kent W. McKinley
**Sent:** Tuesday, October 23, 2018 10:42 AM
**To:** 'PublicRecordRequest@pd.boston.gov' <PublicRecordRequest@pd.boston.gov>
**Cc:** Michelle M. Byers <mbyers@hermesnetburn.com>; Jeremy Y. Weltman <jweltman@hermesnetburn.com>; Kent W. McKinley <KMcKinley@hermesnetburn.com>
**Subject:** RE: Request for Copy of Transcript of Detective G. Renee Payne-Callender's October 4, 2018 Internal Affairs Interview

Good morning,

In addition to the below, could you also provide the transcript of Detective Payne-Callender's 9/19/2017 Internal Affairs interview?

Thank you and please let me know if you have any questions.

-   Kent McKinley

1

**From:** Kent W. McKinley
**Sent:** Thursday, October 18, 2018 2:14 PM
**To:** 'PublicRecordRequest@pd.boston.gov' <PublicRecordRequest@pd.boston.gov>
**Cc:** Kent W. McKinley <KMcKinley@hermesnetburn.com>; Michelle M. Byers <mbyers@hermesnetburn.com>; Jeremy Y. Weltman <jweltman@hermesnetburn.com>
**Subject:** Request for Copy of Transcript of Detective G. Renee Payne-Callender's October 4, 2018 Internal Affairs Interview

Good afternoon,

Jeremy Weltman, Michelle Byers, and myself are attorneys at the firm of Hermes, Netburn, O'Connor & Spearing, P.C. and we represent Detective G. Renee Payne-Callender. We are requesting a copy of the transcript of Detective Payne-Callender's recent Internal Affairs interview, which was conducted on October 4, 2018. Please provide such transcript as soon as possible and please let me know if you require any more information or have any questions.

Thank you

Kent W. McKinley
Associate
Hermes, Netburn, O'Connor & Spearing, P.C.



265 Franklin Street, 7th Floor | Boston, MA 02110
direct 617.210.7713 | cell 207.415.4205 | main 617.728.0050
kmckinley@hermesnetburn.com | www.hermesnetburn.com

Note: This electronic mail may contain information that is privileged, confidential or exempt from disclosure under applicable law. Any dissemination, copying or use of this electronic mail by or to anyone other than the designated and intended recipient(s) is unauthorized. If you received this message in error, then please delete it from your system and contact the sender immediately. E-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged. IRS CIRCULAR DISCLOSURE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed therein.

# EXHIBIT C

## Michelle M. Byers

| | |
|---|---|
| **From:** | Kent W. McKinley |
| **Sent:** | Tuesday, October 23, 2018 10:42 AM |
| **To:** | 'PublicRecordRequest@pd.boston.gov' |
| **Cc:** | Michelle M. Byers; Jeremy Y. Weltman; Kent W. McKinley |
| **Subject:** | RE: Request for Copy of Transcript of Detective G. Renee Payne-Callender's October 4, 2018 Internal Affairs Interview |

Good morning,

In addition to the below, could you also provide the transcript of Detective Payne-Callender's 9/19/2017 Internal Affairs interview?

Thank you and please let me know if you have any questions.

- Kent McKinley

**From:** Kent W. McKinley
**Sent:** Thursday, October 18, 2018 2:14 PM
**To:** 'PublicRecordRequest@pd.boston.gov' <PublicRecordRequest@pd.boston.gov>
**Cc:** Kent W. McKinley <KMcKinley@hermesnetburn.com>; Michelle M. Byers <mbyers@hermesnetburn.com>; Jeremy Y. Weltman <jweltman@hermesnetburn.com>
**Subject:** Request for Copy of Transcript of Detective G. Renee Payne-Callender's October 4, 2018 Internal Affairs Interview

Good afternoon,

Jeremy Weltman, Michelle Byers, and myself are attorneys at the firm of Hermes, Netburn, O'Connor & Spearing, P.C. and we represent Detective G. Renee Payne-Callender. We are requesting a copy of the transcript of Detective Payne-Callender's recent Internal Affairs interview, which was conducted on October 4, 2018. Please provide such transcript as soon as possible and please let me know if you require any more information or have any questions.

Thank you

Kent W. McKinley
Associate
Hermes, Netburn, O'Connor & Spearing, P.C.

 HERMES
NETBURN

265 Franklin Street, 7th Floor | Boston, MA 02110
direct 617.210.7713 | cell 207.415.4205 | main 617.728.0050
kmckinley@hermesnetburn.com | www.hermesnetburn.com

Note: This electronic mail may contain information that is privileged, confidential or exempt from disclosure under applicable law. Any dissemination, copying or use of this electronic mail by or to anyone other than the designated and intended recipient(s) is unauthorized. If you received this message in error, then please delete it from your system and contact the sender immediately. E-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged. IRS CIRCULAR DISCLOSURE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed therein.

1

# EXHIBIT D

## Michelle M. Byers

| | |
|---|---|
| **From:** | Jennifer Samson <jennifer.samson@pd.boston.gov> |
| **Sent:** | Monday, November 05, 2018 3:58 PM |
| **To:** | Kent W. McKinley |
| **Cc:** | PublicRecordRequest@pd.boston.gov; Michelle M. Byers; Jeremy Y. Weltman |
| **Subject:** | Re: Request for Copy of Transcript of Detective G. Renee Payne-Callender's October 4, 2018 Internal Affairs Interview |
| **Attachments:** | image002.png |

Good afternoon Attorney McKinley:

In response to your request, I was advised that the investigations of the two Internal Affairs cases involving Det. Payne-Callender are pending. These cases are identified as IAD2017-0409 and IAD2018-0354. Accordingly, the contents of these files, including Det. Payne-Callender's interviews, are not subject to disclosure under the investigatory exemption of the public records law. See M.G.L. c. 4 § 7(26th)(f). The exemption allows investigative officials to withhold materials that could compromise investigative efforts if disclosed. Accordingly, a records custodian may withhold any information relating to an ongoing investigation that could potentially alert suspects to the activities of investigative officials, and similarly, records custodians may withhold confidential investigative techniques indefinitely since their disclosure would prejudice future law enforcement efforts. These interviews and any other related materials will be made available at the conclusion of the investigations.


Thank you,

Jennifer Samson
Legal Assistant
Boston Police Department
Office of the Legal Advisor
One Schroeder Plaza, 4th Floor
Boston, MA 02120
617.343.4550 (p)
617.343.4609 (f)


CONFIDENTIALITY NOTICE: **The information contained in this electronic mail transmission is intended by the Boston Police Department's Office of the Legal Advisor for the use of the named individual or entity to which it is directed and may contain information that is privileged or otherwise confidential. If you have received this electronic mail transmission in error, please delete it from your system without copying or forwarding it, and notify the sender of the error by reply e-mail so that the sender's address records can be corrected.**

# EXHIBIT E

## Michelle M. Byers

| | |
|---|---|
| **From:** | Kent W. McKinley |
| **Sent:** | Wednesday, November 07, 2018 11:48 AM |
| **To:** | 'Jennifer Samson' |
| **Cc:** | PublicRecordRequest@pd.boston.gov; Michelle M. Byers; Jeremy Y. Weltman; Kent W. McKinley |
| **Subject:** | RE: Request for Copy of Transcript of Detective G. Renee Payne-Callender's October 4, 2018 Internal Affairs Interview |

Hi Jennifer,

The BPD has the burden of proving with specificity that that such exception is applicable to Detective Payne-Callender's request. *See, Rafuse v. Stryker*, 61 Mass. App. Ct. 595, 597, 813 N.E.2d 558, 561 (Mass. Ct. App. 2004). To meet this burden, the BPD must demonstrate that the release of the documents requested by Detective Payne-Callender "would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest." *See, In re Subpoena Duces Tecum*, 445 Mass. 685, 690, 840 N.E.2d 470, 475 (Mass. 2006). This is a fact intensive analysis and "a decision whether an exemption to disclosure applies requires careful case-by-case consideration." *See, WBZ-TV4 v. Dist. Atty. for Suffolk Dist.*, 408 Mass. 595, 603, 562 N.E.2d 817, 822 (1990). M.G.L. c. 4 § 7 is not a "blanket exemption for police records or investigation materials." *See, Antell v. Attorney Gen.*, 52 Mass. App. Ct. 244, 248, 752 N.E.2d 823, 826 (Mass. App. Ct. 2001). And the fact that "some exempt material may be found in a document or report of an investigatory character" does not prohibit its disclosure. *See, Reinstein v. Police Com'r of Boston*, 378 Mass. 281, 290, 391 N.E.2d 881, 886 (Mass. 1979).

Significantly, the Massachusetts Supreme Judicial Court has ruled that this exception does not permit the BPD to withhold Internal Affairs materials that are relevant to a pending action alleging employment discrimination. *See, Boston Police Superior Officers Fed'n v. City of Boston*, 414 Mass. 458, 608 N.E.2d 1023 (Mass. 1993). Detective Payne-Callender's complaint is currently pending with the MCAD and the requested documents are relevant to her complaint.

I suggest that the BPD produce the requested documents pursuant to a protective order, eliminating any concerns the BPD may have regarding any prejudicial impact on the possibility of effective law enforcement.

Please advise by November 9, 2018 if the BPD is willing to produce Detective Payne-Callender's requested documents pursuant to a mutually agreeable protective order, or if the BPD will force us to bring a lawsuit to obtain the documents being sought by my client.

Thank you

Kent McKinley


**From:** Jennifer Samson [mailto:jennifer.samson@pd.boston.gov]
**Sent:** Monday, November 5, 2018 3:58 PM
**To:** Kent W. McKinley <KMcKinley@hermesnetburn.com>
**Cc:** PublicRecordRequest@pd.boston.gov; Michelle M. Byers <mbyers@hermesnetburn.com>; Jeremy Y. Weltman <jweltman@hermesnetburn.com>
**Subject:** Re: Request for Copy of Transcript of Detective G. Renee Payne-Callender's October 4, 2018 Internal Affairs Interview

Good afternoon Attorney McKinley:

1

In response to your request, I was advised that the investigations of the two Internal Affairs cases involving Det. Payne-Callender are pending. These cases are identified as IAD2017-0409 and IAD2018-0354. Accordingly, the contents of these files, including Det. Payne-Callender's interviews, are not subject to disclosure under the investigatory exemption of the public records law. See M.G.L. c. 4 § 7(26th)(f). The exemption allows investigative officials to withhold materials that could compromise investigative efforts if disclosed. Accordingly, a records custodian may withhold any information relating to an ongoing investigation that could potentially alert suspects to the activities of investigative officials, and similarly, records custodians may withhold confidential investigative techniques indefinitely since their disclosure would prejudice future law enforcement efforts. These interviews and any other related materials will be made available at the conclusion of the investigations.


Thank you,

Jennifer Samson
Legal Assistant
Boston Police Department
Office of the Legal Advisor
One Schroeder Plaza, 4th Floor
Boston, MA 02120
617.343.4550 (p)
617.343.4609 (f)



CONFIDENTIALITY NOTICE: **The information contained in this electronic mail transmission is intended by the Boston Police Department's Office of the Legal Advisor for the use of the named individual or entity to which it is directed and may contain information that is privileged or otherwise confidential. If you have received this electronic mail transmission in error, please delete it from your system without copying or forwarding it, and notify the sender of the error by reply e-mail so that the sender's address records can be corrected.**



On Mon, Nov 5, 2018 at 10:47 AM Kent W. McKinley <KMcKinley@hermesnetburn.com> wrote:

Good morning,


Please advise on the status of Detective Payne-Callender's requests for the transcripts of her Internal Affairs interviews.


Thank you

Kent McKinley

**From:** Kent W. McKinley
**Sent:** Thursday, November 1, 2018 1:34 PM
**To:** 'PublicRecordRequest@pd.boston.gov' <PublicRecordRequest@pd.boston.gov>
**Cc:** Michelle M. Byers <mbyers@hermesnetburn.com>; Jeremy Y. Weltman
<jweltman@hermesnetburn.com>; Kent W. McKinley <KMcKinley@hermesnetburn.com>
**Subject:** RE: Request for Copy of Transcript of Detective G. Renee Payne-Callender's October 4, 2018
Internal Affairs Interview

Good afternoon,

I am following up regarding our request for the transcripts of Detective Payne-Callender's Internal Affairs
interviews. Please advise regarding the status of our requests.

Thank you

Kent McKinley

**From:** Kent W. McKinley
**Sent:** Tuesday, October 23, 2018 10:42 AM
**To:** 'PublicRecordRequest@pd.boston.gov' <PublicRecordRequest@pd.boston.gov>
**Cc:** Michelle M. Byers <mbyers@hermesnetburn.com>; Jeremy Y. Weltman
<jweltman@hermesnetburn.com>; Kent W. McKinley <KMcKinley@hermesnetburn.com>
**Subject:** RE: Request for Copy of Transcript of Detective G. Renee Payne-Callender's October 4, 2018
Internal Affairs Interview

Good morning,

In addition to the below, could you also provide the transcript of Detective Payne-Callender's 9/19/2017
Internal Affairs interview?

Thank you and please let me know if you have any questions.


-   Kent McKinley


**From:** Kent W. McKinley
**Sent:** Thursday, October 18, 2018 2:14 PM
**To:** 'PublicRecordRequest@pd.boston.gov' <PublicRecordRequest@pd.boston.gov>
**Cc:** Kent W. McKinley <KMcKinley@hermesnetburn.com>; Michelle M. Byers
<mbyers@hermesnetburn.com>; Jeremy Y. Weltman <jweltman@hermesnetburn.com>
**Subject:** Request for Copy of Transcript of Detective G. Renee Payne-Callender's October 4, 2018 Internal
Affairs Interview


Good afternoon,


Jeremy Weltman, Michelle Byers, and myself are attorneys at the firm of Hermes, Netburn, O'Connor &
Spearing, P.C. and we represent Detective G. Renee Payne-Callender. We are requesting a copy of the
transcript of Detective Payne-Callender's recent Internal Affairs interview, which was conducted on October 4,
2018. Please provide such transcript as soon as possible and please let me know if you require any more
information or have any questions.


Thank you


Kent W. McKinley

Associate

Hermes, Netburn, O'Connor & Spearing, P.C.



265 Franklin Street, 7th Floor | Boston, MA 02110
direct 617.210.7713 | cell 207.415.4205 | main 617.728.0050
kmckinley@hermesnetburn.com | www.hermesnetburn.com

4