UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-11286-RGS

G. RENEE PAYNE-CALLENDER

v.

DONNA M. GAVIN &
CITY OF BOSTON POLICE DEPARTMENT

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTIONS TO DISMISS

September 16, 2019

STEARNS, D.J.

By way of her Verified Complaint, G. Renee Payne-Callender, a detective employed by the Boston Police Department (BPD), is suing her superior, Lieutenant Detective Donna Gavin, and the BPD for alleged discrimination based on race, gender, and age (Counts I & II); hostile workplace (Count III & IV); retaliation (Counts V & VI); discrimination based on "sham investigation" (Count VII & VIII); and intentional and negligent infliction of emotional distress (Counts IX and X).[1] Gavin timely removed the case from Suffolk Superior Court to this court on grounds of

---

[1] Payne-Callender asserts Counts I and II under 29 U.S.C. § 631 and the state analog, Mass. Gen. Laws Ch. 151B, §4. The remaining claims are brought solely under state law.

federal question jurisdiction on June 10, 2019.  The court heard oral argument on the defendants' motions to dismiss on September 12, 2019.

BACKGROUND

The factual allegations of the Verified Complaint, accepted as true for purposes of deciding defendants' Rule 12(b)(6) motions, are as follows. Payne-Callender is a 56-year-old black woman, and a veteran of the BPD with a decorated career.  In 2007, Payne-Callender was assigned to the Human Trafficking Unit of the Family Justice Division of the BPD, a prestigious assignment for which she was highly qualified.  In 2009, Gavin became Payne-Callender's immediate supervisor in the Human Trafficking Unit.  Because Payne-Callender and Gavin worked separate shifts, Payne-Callender was unable to report to Gavin in person.  In September of 2010, after Gavin deliberately refused to answer after-hours phone calls from Payne-Callender, Payne-Callender was reprimanded by then-Deputy Superintendent Kelly Nee for failing to report an incident involving a city councilor.  In May of 2011, Gavin complained to Captain Detective Mark Hayes that Payne-Callender had failed to inform her of a request from the State Police seeking assistance in an investigation, even though Payne-Callender had directed the State Police to contact Gavin directly.  Gavin stated to Hayes that she could not manage Payne-Callender and did not like

Payne-Callender, and received permission from Hayes to transfer Payne-Callender out of the Human Trafficking Unit. Gavin filled Payne-Callender's position with a younger black female detective, who was subsequently replaced by a younger white male detective in less than a year.

Payne-Callender sought a transfer to the Special Investigations Unit, but it was denied. Thereafter, although Gavin attempted to prevent it, Payne-Callender was transferred to the Crimes Against Children Unit, also a part of the Family Justice Division and housed in the same building as the Human Trafficking Unit. In August of 2014, Gavin unsuccessfully attempted to block Payne-Callender from attending a human trafficking training seminar, on the grounds that Payne-Callender no longer worked in the Trafficking Unit. Also in 2014, Payne-Callender sought to take the sergeant's exam early because of a death in her family, but was told that only officers on active military duty abroad was permitted to take the exam on other than the designated date. She later learned that two male officers, who were not on active military duty, were permitted to take the exam at alternate times.

On February 14, 2017, the day before a human trafficking training seminar for which Payne-Callender had received an email save-the-date, Gavin uninvited her and a male detective in the Crimes Against Children Unit on the pretext that there was insufficient space. In May of 2017, during an

3

interview in connection with internal cross-complaints between Gavin and Hayes,[2] Payne-Callender expressed a fear of retaliation from Gavin for her cooperation with the investigation.

In August of 2017, Payne-Callender had an altercation with a civilian clerk of the Trafficking Unit over the delayed relay of messages while Payne-Callender's computer was down for repairs. When Gavin learned of the incident, she insisted that all members of the Trafficking Unit and Payne-Callender submit written reports. Payne-Callender later learned that Gavin asked a sergeant detective in the Human Trafficking Unit to rewrite his report to remove certain facts (presumably favorable to Payne-Callender), and that ultimately, Gavin only submitted the report of the civilian clerk to the BPD human resources (HR) department.

On September 8, 2017, Payne-Callender filed a formal "Harassment and Hostile Work Environment" claim against Gavin with the BPD Internal Affairs Division. BPD did not meaningfully investigate Payne-Callender's claims – the initial investigation officer's synopsis was inaccurate and inconsistent, and after his retirement, the new investigation officer did not reach out to Payne-Callender. Superintendent Frank Mancini falsely

---

[2] Gavin filed an internal complaint against Hayes for harassment, hostile work environment, gender discrimination, and retaliation, Hayes countered with claims for neglect of duty and directives.

4

reported the he spoke to Payne-Callender about her complaint.  Contrary to its usual policy and practice, BPD did not remove Payne-Callender from Gavin's chain of command to protect Payne-Callender from retaliation,[3] and the investigation remains incomplete because of the pending litigation involving Gavin, Hayes, and the BPD.[4]

Payne-Callender went on medical leave from March of 2018 to February of 2019.  During this period, Gavin systematically left Payne-Callender off of emails sent to all detectives in the Human Trafficking and Crimes Against Children Units.  This kept Payne-Callender from being informed of on-going investigations and department directives, and put her at a disadvantage when she returned to work.  According to the Complaint, Gavin claimed that she also kept a white male detective who was on leave off the emails.

In June of 2018, Payne-Callender filed a complaint with the Massachusetts Commission Against Discrimination (MCAD).  BPD opened a

---

[3] The Complaint appears to be somewhat contradictory on Payne-Callender's relationship with Gavin at this point, stating in the preamble that Payne-Callender was "no longer under Gavin's direct supervision" in the Crimes Against Children Unit, Compl. at 2, but also that "Gavin remain[ed] Payne-Callender's direct supervisor" after her internal affairs complaint, *id.* ¶ 104.

[4] *Gavin v. Boston Police Department*, No. 18-CV-10819, is pending before Judge Sorokin.

corresponding internal investigation, and interviewed Payne-Callender in October of 2018. Despite multiple requests and an offer to enter into a confidentiality agreement, BPD refused to provide Payne-Callender a transcript of her interview or of the several interviews it had conducted in connection with her 2017 internal affairs complaint, on the grounds that the investigations were on-going. In February of 2019, an internal affairs investigator attempted to gather information from Payne-Callender directly, despite the pendency of the MCAD complaint.

When Payne-Callender returned work in February of 2019, BPD did not transfer her out of the Crimes Against Children Unit, and Gavin remained her supervisor. Payne-Callender's new partner warned her that he would report any information that she disclosed to Gavin. Gavin also intentionally avoided Payne-Callender's office, making it impossible for Payne-Callender to adhere to BPD reporting requirements. When Payne-Callender sought approval to teach an outside criminal justice course, rather than accepting a one-page form as BPD had done the previous seven times she sought similar permission, the Legal Department required Payne-

Callender to submit an additional written report.[5] Payne-Callender filed suit on April 17, 2019.

DISCUSSION

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations of a complaint must "possess enough heft" to set forth "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 559 (2007); *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008). As the Supreme Court has emphasized, this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

A threshold issue is whether a majority of the incidents described in the Complaint occurred within the statute of limitations. The parties agree that a discrimination-based claim must be filed with the MCAD within 300 days of the allegedly discriminatory conduct. *See* 29 U.S.C. § 626(d)(1), Mass. Gen. Laws Ch. 151B, § 5. Payne-Callender submitted her MCAD

---

[5] The Complaint is silent as to whether Payne-Callender was ultimately permitted to teach.

complaint on June 28, 2018. According to defendants, any alleged conduct prior to September 1, 2017 is therefore time-barred.

Payne-Callender, for her part, maintains that the entire chronology set out in the Complaint may be considered under the "continuing violation doctrine." "[T]he 300 day requirement shall not be a bar to filing in those instances where facts are alleged which indicate that the unlawful conduct complained of is of a continuing nature . . . ." 804 Mass. Code Regs. § 1.10(2). To avail herself of the "continuing violation doctrine," Payne-Callender must establish that

> (1) at least one discriminatory act occurred within the [300-day] limitations period; (2) the alleged timely discriminatory acts have a substantial relationship to the alleged untimely discriminatory acts . . . [and] (3) earlier violations outside the [300-day] limitations period did not trigger [Payne-Callender's] 'awareness and duty' to assert [her] rights, i.e., that [Payne-Callender] could not have formed a reasonable belief at the time the employment actions occurred that they were discriminatory.

*Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against Discrimination*, 441 Mass. 632, 642-643 (2004). Payne-Callender identifies a meeting on September 6, 2017, where she learned that Gavin had submitted only the civilian clerk's altercation incident report to HR, as the anchoring event. The Complaint, however, avers that Payne-Callender became aware of Gavin's and the BPD's discriminatory motives years earlier. When Gavin transferred Payne-Callender out of the Trafficking Unit in 2011,

8

Gavin "stated she did not like Payne-Callender," Compl. ¶ 17, and "it became *increasingly clear* to Payne-Callender that Gavin harbored discriminatory animus toward her on the basis of race, gender and age." Compl. ¶ 20 (emphasis added). Payne-Callender cemented this opinion when Gavin replaced the younger black female detective who had taken Payen-Callender's place with a younger white male detective in less than a year, "mask[ing] the true intent of the Boston Police [] to replace Payne-Callender with a younger, white, male detective." *Id.* ¶ 22. Payne-Callender's "awareness and duty to assert [her] rights" having been triggered when she "formed a reasonable belief" that her 2011 transfer was discriminatory, she cannot not now seek to expand the limitations period.

The BPD next argues that Payne-Callender has not pled plausible claims for discrimination and retaliation within the limitations period because she has not alleged that she suffered an adverse employment action, an element of a prima facie case for both claims. *See Aly v. Mohegan Council, Boy Scouts of Am.*, 711 F.3d 34, 46 (1st Cir. 2013) ("To set out a prima facie case [of discrimination], a plaintiff bears the burden of showing that (1) he or she is a member of a protected class; (2) possessed the necessary qualifications and adequately performed his or her job; (3) was nevertheless dismissed or otherwise suffered an adverse employment action

at the hand of his or her employer; and (4) his or her employer sought someone of roughly equivalent qualifications to perform substantially the same work."); *Mole v. Univ. of Massachusetts*, 442 Mass. 582, 591-592 (2004) ("To make out his prima facie case [of retaliation], [plaintiff] had to show that he engaged in protected conduct, that he suffered some adverse action, and that "a causal connection existed between the protected conduct and the adverse action."). "Typically, an adverse employment action involves a discrete change in the terms and conditions of employment (say, a discharge, demotion, or reduction in pay)," *Noviello v. City of Boston*, 398 F.3d 76, 88 (1st Cir. 2005). Because Payne-Callender does not identify any such discrete changes in the terms or conditions of her employment in the limitations period as a result of the alleged discrimination, the BPD concludes that her claims fail as a matter of law.

The court agrees that Payne-Callender has not alleged an adverse employment action for the discrimination claims. In the context of a discrimination claim,

> an action taken by an employer is an "adverse employment action" where it is "substantial enough to have materially disadvantaged an employee." "Material disadvantage for this purpose arises when objective aspects of the work environment are affected." The disadvantage must be objectively apparent to a reasonable person in the employee's position; "subjective feelings of disappointment and disillusionment" will not suffice.

*Yee v. Massachusetts State Police*, 481 Mass. 290, 296-297 (2019) (citations omitted). Here, Payne does not allege that she suffered a discharge, demotion, or reprimand, was denied a sought promotion or transfer, lost income, or suffered a similar "material disadvantage" within the limitations period.

A retaliatory adverse action, in contrast, "may also consist of a continuing pattern of behavior that is, by its insidious nature, linked to the very acts that make up a claim of hostile work environment." *Clifton v. Massachusetts Bay Transp. Auth.*, 445 Mass. 611, 616 (2005); *see also Noviello*, 298 F.3d at 88-91 ("[T]he creation and perpetuation of a hostile work environment can comprise a retaliatory adverse employment action" under federal and state law.).

> A hostile work environment is one that is "pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, [and that] poses a formidable barrier to the full participation of an individual in the workplace." . . . [M]any incidents in isolation may not be serious enough for complaint. However, when linked together, the seemingly disparate incidents may show a prolonged and compelling pattern of mistreatment . . . .

*Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521, 532-533 (2001). Here, Payne-Callender alleges that because she provided information in the investigation of the dispute between Gavin and Hayes and filed her own internal and MCAD complaints, Gavin and the BPD engaged in a pattern of

behavior marginalizing her ability to participate fully at work.[6]  The pattern includes Gavin's alleged selective reporting of the altercation in what Payne-Callender characterizes as an attempt to smear her reputation, Gavin's withholding of work-related information while Payne-Callender was on leave, Gavin requiring Payne-Callender's new partner to monitor and report on her, Gavin's deliberate avoidance of Payne-Callender's reports, BPD's failure to meaningfully investigate Payne-Callender's internal and MCAD complaints, and BPD's failure to apply its own policy and remove Payne-Callender from Gavin's chain of command after the complaints.  Taken as a collective whole, these incidents sketch out plausible claims for retaliation and hostile work environment.

Finally, Gavin asserts, and the court agrees, that the exclusivity provision of the Workers' Compensation Act bars Payne-Callender's claims for intentional and negligent emotional distress.[7]  "Workers' compensation is the exclusive remedy against employers and coemployees who commit

---

[6] Based on Payne-Callender's identification of her protected activities, the earliest of which occurred in May of 2017, all of the alleged retaliatory incidents occurred within the limitations period.

[7] Payne-Callender concedes that the Workers' Compensation Act bars her claims of intentional and negligent emotional distress against the BPD.  *See Green v. Wyman-Gordon, Co.*, 422 Mass. 551, 558 (1996) (intentional and negligent infliction of emotional distress claims against employer barred by the Workers' Compensation Act).

tortious acts 'within the course of their employment and in furtherance of the employer's interest.'" *Fredette v. Simpson*, 440 Mass. 263, 266 (2003). "An employee has acted in the course of employment whenever he has, on the employer's premises, engaged in conduct consistent with his contract of hire and pertinent or incidental to his employment." *Id.* Here, all of Gavin's complained-of conduct occurred while she served in a supervisory role to Payne-Callender in the BPD, and thus fall within "the course of [her] employment."[8]

## ORDER

For the foregoing reasons, defendants' motions to dismiss are <u>ALLOWED</u> with respect to Counts I, II, VII, VIII, IX, and X, <u>ALLOWED IN PART</u> with respect to Counts III and IV for conduct prior to September 1, 2017, and <u>DENIED</u> with respect to Counts V and VI.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[8] The court dismisses the "discrimination based sham investigation" claims (Counts VII and VIII) as the counts do not describe a cause of action known in federal, state, or common law.