UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-11286-RGS

G. RENEE PAYNE-CALLENDER

v.

DONNA M. GAVIN &
CITY OF BOSTON POLICE DEPARTMENT

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

February 10, 2021

STEARNS, D.J.

In this employment dispute, G. Renee Payne-Callender, a Boston
Police Department (BPD) detective, asserts claims for retaliation and hostile
work environment against the BPD and her former supervisor Lieutenant
Detective Donna M. Gavin.  Discovery having concluded, defendants seek
brevis judgment.

## BACKGROUND[1]

In 2017, Payne-Callender reported to Sergeant Detectives Thomas
Lembo and Brian Miller in the Crimes Against Children Unit (CACU) of the

---

[1] At the summary judgment stage, "[t]he evidence of the non-movant
is to be believed, and all justifiable inferences are to be drawn in [her] favor."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Case 1:19-cv-11286-RGS   Document 79   Filed 02/10/21   Page 2 of 14

Family Justice Center (FJC) of the BPD, who in turn reported to Gavin (as the head of both the CACU and the Human Trafficking Unit (HTU) within the FJC).[2]  In April and May of 2017, Gavin and her immediate supervisor, Captain Mark Hayes (the commander of the FJC), filed cross internal complaints against each other for alleged workplace harassment and violations of BPD rules.  As a result of her complaint, BPD removed Gavin from Hayes's chain-of-command and assigned a Deputy Superintendent as her direct report.  Payne-Callender was interviewed in connection with the Gavin-Hayes dispute on May 19, 2017, and again on August 11, 2017.[3]

On August 16, 2017, Payne-Callender had a heated exchange with a civilian clerk of the HTU, Janet Dougherty.[4]  The next day, having spoken to

---

[2] Payne-Callender's Verified Complaint outlines a history of personal conflict with Gavin dating back to 2009, when Gavin became her immediate supervisor.  *See Payne-Callender v. Gavin*, 2019 WL 4417688, at *1-3 (D. Mass. Sept. 16, 2019).  Most of those incidents fell outside of the 300-day statute of limitations preceding plaintiff's June of 2018 MCAD complaint. *Id.* at *3.

[3] The Gavin-Hayes dispute has since generated its own independent lawsuit.  *See Gavin v. Boston Police Dep't*, No. 18-10819-LTS (D. Mass.).

[4] Dougherty received an IT request to unplug Payne-Callender's virus-plagued computer.  Rather than deliver the message to plaintiff, Dougherty "thrust" the printout at Lembo in the CACU with the instruction, "You take care of this."  Dkt # 73-18.  When Lembo inquired as to why, Dougherty indicated, "I'm not going down there," referring to plaintiff's office. *Id.*  The message and its delivery irritated Payne-Callender, causing her to approach Dougherty's supervisor in the HTU, Sergeant Kathy Doris, with her

2

the sergeants involved, Hayes determined that the matter had been resolved, relieving the parties and witnesses from having to complete Form 26 reports (a BPD internal incident report).  Nevertheless, Dougherty submitted a Form 26 to Gavin, alleging that Payne-Callender engaged in "bullying," "condescending and hostile" behavior.  Dkt # 65-8.  Rather than accept the report, Gavin directed Dougherty to submit it to Doris, her immediate supervisor, triggering further reports from Payne-Callender and other witnesses.

On August 22, 2017, Doris shared with Gavin the incident reports she had collected and informed Gavin that the matter had been resolved.  The following day, Gavin forwarded Dougherty's report to Superintendent Gregory Long with a cover message questioning whether Payne-Callender's behavior had violated BPD Rule 114 (prohibiting workplace harassment).  Meanwhile, Gavin intimated to Lembo, who had authored a report consistent with Payne-Callender's perspective, that Human Resource (HR) had taken issue with some of the language of his report and asked him to revise it.

---

grievance.  After overhearing plaintiff's characterization of her refusal to deliver the message personally as "childish," Dougherty intervened and engaged plaintiff in words.  Dkt # 65-8.  At some point in the exchange plaintiff called Dougherty "ignorant and childish."  *Id.*  Afterwards, Lembo advised Payne-Callender that in "any future contact with [] Dougherty she should have the assistance of a CACU supervisor so as to avoid any miscommunication."  Dkt # 73-18.

Lembo provided Gavin with a copy of his original report marked for HR, but Gavin did not refer it to HR.  Long, after consultation with BPD legal counsel, concluded that Dougherty's report did not document any actionable violation of BPD rules.  Long then forwarded Dougherty's report to HR director Mary Flaherty for review.  When Flaherty contacted Payne-Callender, she learned that Gavin had submitted only Dougherty's incident report.

On September 8, 2017, Payne-Callender filed a complaint with the Internal Affairs Division (IAD), claiming that Gavin's one-sided presentation of her dispute with Dougherty had been motivated by retaliation and had contributed to the creation of a hostile work environment.  IAD interviewed Payne-Callender on September 19, 2017.  After meeting with eight witnesses, IAD Sergeant Detective John Puglia issued a 32-page report exonerating Gavin.  Following multiple internal reviews and an additional report from IAD Lieutenant Detective Brian McEachern, the investigation was formally closed in May of 2019.

Between March 14, 2018 and February 11, 2019, Payne-Callender was placed on medical leave following a job-related injury.  During her absence, Gavin omitted Payne-Callender as a recipient of official emails that she sent to CACU staff.  Payne-Callender filed her MCAD complaint in June of 2018.

IAD opened another investigation. After interviewing nine witnesses, IAD Sergeant Detective Daniel Pusey issued a 40-page report determining that Payne-Callender's charges had not been sustained.

On the day that Payne-Callender returned to work, February 11, 2019, Detective John Noberini was transferred to the CACU and assigned as her partner. Detective Noberini informed Payne-Callender that he was Gavin's friend, was aware of her fractious relationship with Gavin, and warned that if asked, he would report his conversations with Payne-Callender to Gavin. Gavin, for her part, deliberately avoided Payne-Callender and refused to speak with her. Gavin was transferred out of the FJC in March of 2019. Plaintiff filed her Verified Complaint in the district court in April of 2019.

## DISCUSSION

A movant is entitled to summary judgment upon a "show[ing] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To make out [a] prima facie case [of retaliation], [plaintiff] had to show that he engaged in protected conduct, that he suffered some adverse action, and that 'a causal connection existed between the protected conduct and the adverse action.'" *Mole v. Univ. of Massachusetts*, 442 Mass. 582, 591-592 (2004), quoting *Mesnick v.*

*General Elec. Co.*, 950 F.2d 816, 827 (1st Cir. 1991).[5]  A retaliatory adverse action "may [] consist of a continuing pattern of behavior that is, by its insidious nature, linked to the very acts that make up a claim of hostile work environment."  *Clifton v. Mass. Bay Transp. Auth.*, 445 Mass. 611, 616 (2005); *see also Noviello v. City of Boston*, 298 F.3d 76, 88-91 (1st Cir. 2005) ("[T]he creation and perpetuation of a hostile work environment can comprise a retaliatory adverse employment action" under federal and state law.).

> To prove a hostile work environment,

> a plaintiff must show that she was subjected to severe or pervasive harassment that materially altered the conditions of her employment. *Faragher* [*v. City of Boca Raton*], 524 U.S. [775,]  786 [(1998)].  The harassment must be "objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* at 787.  In determining whether a reasonable person would find particular conduct hostile or abusive, a court must mull the totality of the circumstances, including factors such as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 787-788 (quoting *Harris* [*v. Forklift Sys., Inc.*], 510 U.S. [17,] 23 [(1993)]). The thrust of this inquiry is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment.

---

[5] While Payne-Callender's claims for retaliation and hostile work environment are brought under state law, *see* Compl. (dkt # 1-1) at 24-26, state and federal law analyze the claims identically, *see Wheatley v. Am. Tel. & Tel. Co.*, 418 Mass. 394, 397 (1994).

*Noviello*, 398 F.3d at 92. "Summary judgment is an appropriate vehicle for 'polic[ing] the baseline for hostile environment claims,'" *Pomales v. Celulares Telefonica, Inc.*, 447 F.3d 79, 83 (1st Cir. 2006) (citation omitted), however, "[b]ecause this inquiry is fact specific, the determination is often reserved for a fact finder," *id.*

*Retaliatory Hostile Environment Claim Based on Gavin's Conduct*

Where, as here, the alleged harasser is a supervisory employee, the employer may be found vicariously liable under common-law principles of agency. *Coll.-Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination*, 400 Mass. 156, 165 (1987). Defendants do not dispute that providing information during an investigation – in this case, Payne-Callender's interviews regarding the ongoing Gavin-Hayes dispute – qualifies as protected conduct. Defendants contend, however, that there is no causal connection between this conduct and any alleged ill-treatment because Gavin neither knew that Payne-Callender had been interviewed, nor what, if anything, she had said during those interviews.

The court agrees with plaintiff that she has identified evidence, if credited, that could permit a factfinder to infer that Gavin had the requisite prior knowledge. Then-Sergeant Detective Richard Dahill, who was assigned to investigate the Gavin-Hayes cross-complaints, interviewed Payne-

Callender on May 19, 2017, at Hayes's behest concerning a file missing from the HTU. *See* Dkt # 70-24. On the same day, Dahill informed Gavin that Payne-Callender was looking for the file. *See* Dkt # 73-4. Gavin also learned from Assistant District Attorney Maryrose Anthes, in June of 2017, that Payne-Callender had participated in the investigation of the missing file. *See* Dkt # 70-27.

Temporal proximity – such as between the May of 2017 interview and the August of 2017 Dougherty incident – "can suffice to 'meet the relatively light burden of establishing a prima facie case of retaliation.'" *DeCaire v. Mukasey*, 530 F.3d 1, 19 (1st Cir. 2008), as corrected (July 10, 2008) (citation omitted). Moreover, Gavin, in an interview with the IAD in December of 2017, had identified Payne-Callender as a member of a "small group of people" who have antagonized her, positing that "they've met, [and] there's emails about me with them." Dkt # 70-28 at 62-63.

In addition to evidence from which a retaliatory motive could be inferred, a factfinder would be free to reject the credibility of Gavin's explanation for her reaction to the Dougherty incident and her reasons for escalating the conflict after Hayes and Doris independently concluded that the matter had been resolved. Despite her stated concern for the seriousness of the alleged harassment, when Gavin was presented with Dougherty's Form

26 on August 17, she did not report it "immediately" as BPD Rule 114 required. *See* Long Dep. Tr. (dkt # 73-16) at 61 (agreeing that waiting to report until August 23 did not meet the definition of "immediate"). Instead, she insisted that Dougherty submit the Form 26 to Doris in keeping with the chain of command. Despite this intricate pas de trois, on August 23, Gavin nonetheless submitted only Dougherty's report to Long.[6] On these facts, a jury might infer that Gavin specifically targeted Payne-Callender as a perceived member of the Hayes cabal rather than out of genuine concern for Dougherty's allegations.

A reasonable factfinder might also conclude that Gavin's handling of the Dougherty incident resulted in a hostile work environment for Payne-Callender. Plaintiff believed that she was being "attack[ed] personally," dkt # 70-1 at 19, and was "devastated" by the charge of having violated BPD Rule 114, dkt # 73-23 at 60. Two months later, Payne-Callender remained "nervous" at the prospect of Gavin being in charge during Hayes's absence, and reported being under "unnecessary stress" and "feel[ing] as though [she was] continuously being punished for just doing [her] job and nothing else." Dkt # 73-24.

---

[6] Gavin also took issue with the fact that the Form 26 reports were addressed to Hayes rather than to herself as the overseer of the CACU and HTU.

Several witnesses agreed with the accuracy of Payne-Calender's perceptions of her work conditions. According to Dougherty, at about the time plaintiff's grievance arose, the FJC was "a very toxic environment." Dougherty Dep. Tr. (dkt # 73-12) at 28. Long opined that "there was a collective belief that the atmosphere of the FJC would be better served" if Gavin were reassigned. Long Dep. Tr. at 42. The Dougherty incident "created an environment that was less positive and less conducive." Lembo Dep. Tr. (dkt # 73-8) at 142. As a result of the incident, Doris moved up her scheduled vacation because she "didn't want any more controversy," and "just so that [she] could get out of the office." Doris Dep. Tr. (dkt # 73-15) at 87. Hayes, too, agreed with Payne-Callender's claim that she had been the victim of [] Gavin's conduct." Hayes Dep. Tr. (dkt # 73-21) at 136-137.

Turning to the remaining three incidents – the withholding of CACU emails during Payne-Callender's medical leave, Noberini's stated intent to monitor her on her return, and Gavin's deliberate shunning – defendants contend that these are not sufficiently anchored to a protected activity to be actionable.[7] In light of the evidence that Gavin considered plaintiff part of a

---

[7] Payne-Callender argues that based on their past history, she reasonably feared further adverse actions as result of these incidents. Payne-Callender highlights a history of having been faulted for purportedly not following Gavin's protocols, and her suspicion that being left-off of department emails was a trap for the same criticism. Payne-Callender also

group hostile to her months after the Dougherty incident, a factfinder, while

not so compelled, might reasonably infer that she continued to harbor

retaliatory animus towards Payne-Callender.   Further, while "many

incidents in isolation may not be serious enough for complaint . . . when

linked together, the seemingly disparate incidents may show a prolonged and

compelling pattern of mistreatment." *Cuddyer v. Stop & Shop Supermarket

Co.*, 434 Mass. 521, 532-533 (2001).  Finally, "a single act of harassment may,

if egregious enough, suffice to evince a hostile work environment." *Noviello*,

398 F.3d at 84; *see also Gnerre v. Mass. Comm'n Against Discrimination*,

402 Mass. 502, 508 (1988) ("[A] numerosity requirement would unfairly

penalize the plaintiff who took affirmative steps to avoid further harassment

by avoiding the defendant altogether.").   Whether Gavin's handling of the

Dougherty incident constituted egregious harassment is also a question of

fact for the jury.

*BPD's Alleged Inadequate Investigation and Failure to Reassign*

In Payne-Callender's view, BPD did not fairly and meaningfully

investigate her September of 2017 IAD claim.  She identifies as substantial

---

alleges that Gavin treated her differently from other members of the CACU
– she notes that at some point in 2017, Gavin began to take more interest in
and interacted with other CACU staff, but continued to deliberately avoid
her.

deficiencies: (1) the recasting of her retaliation claim as one for unreasonable judgment, *see* Pusey Dep. Tr. (dkt # 70-18) at 215-216 (agreeing that retaliation and unreasonable judgment are distinct claims that need to be investigated differently); (2) failing to thoroughly follow leads and uncovering evidence that Gavin did not submit Lembo's Form 26 to HR, *see* Puglia Dep. Tr. (dkt # 70-21) at 174 (agreeing that Gavin's withholding of reports would be problematic); and (3) failing to consider the fact that Gavin knew of the Dougherty incident a week before taking any action, *see* McEachern Dep. Tr. (dkt # 70-23) at 93-96 (agreeing that the timing of Gavin's knowledge of the incident and her disclosure to Long is relevant). Plaintiff also faults BPD for not removing her from Gavin's chain of command after her IAD complaint, although BPD had done so for Gavin in light of her dispute with Hayes.

BPD maintains, and the court agrees, that the failure to investigate or remediate retaliation claims does not itself constitute retaliation or a hostile work environment. *Thurston v. Henderson*, 230 F.3d 1347 (1st Cir. 2000) ("[F]ailure by an employer to take remedial steps may constitute improper behavior subjecting it to liability, that failure is not itself harassment."), citing *Provencher v. CVS Pharmacy, Div. of Melville Corp.*, 145 F.3d 5, 15 (1st Cir. 1998) (abrogated on other grounds); *see also Fincher v. Depository*

*Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) ("An employee whose complaint is not investigated cannot be said to have thereby suffered a punishment for bringing that same complaint: Her situation in the wake of her having made the complaint is the same as it would have been had she not brought the complaint or had the complaint been investigated but denied for good reason or for none at all."). Payne-Callender does not contend that the inadequate remediation is itself retaliation "for some separate, protected act by the plaintiff." *Fincher*, 604 F.3d at 722. Nor does she identify any concrete examples of how she was allegedly "blackballed" for having filed complaints.

As indicated earlier, a failure to remedy can result in other liability. Under Massachusetts Supreme Judicial Court and First Circuit law, in addition to supervisory liability, an employer is vicariously liable if it knows or should have known of harassment by a non-supervisory co-worker and then fails to promptly implement corrective action. *See Coll-Town*, 400 Mass. at 163; *White v. New Hampshire Dep't of Corr.*, 221 F.3d 254, 261 (1st Cir. 2000). An employer may also be liable for punitive damages for its failure to sufficiently remedy harassment if that failure was outrageous or egregious. *See Gyulakian v. Lexus of Watertown, Inc.*, 475 Mass. 290, 298-299 (2016). "[T]he failure to remedy alleged discrimination also can arise

where the employer purports to investigate the discrimination, but does so in an inadequate manner." *Id.* at 301-302.

In this case, BPD is vicariously responsible for Gavin's actions in her role as a supervisor should plaintiff establish liability on Gavin's part. Neither Payne-Callender nor BPD advances any argument as to whether the alleged deficient investigation or failure to reassign constitutes "egregious or outrageous" conduct sufficient to warrant enhanced employer liability. Accordingly, this matter will also be reserved for the jury under appropriate instructions of law.

ORDER

For the foregoing reasons, defendants' motions for summary judgment are <u>DENIED</u>. The Clerk will set the case for an available trial date before a jury within the constraints of the present pandemic.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

14